**Rachel LAVIN, etc., Plaintiff-Appellant,**

**v.**

**ILLINOIS HIGH SCHOOL ASSOCIA-TION and Board of Education of the City of Chicago, etc., et al., Defend-ants-Appellees.**

No. 74–1829.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1975.

Decided Aug. 29, 1975.

---

Lawrence Schlam, Chicago, Ill., for plaintiff-appellant.

Michael J. Murray, Patricia Whitten, Chicago, Ill., for defendants-appellees.

Before SWYGERT and PELL, Circuit Judges, and GRANT, Senior District Judge.[*]

PER CURIAM.

This appeal presents a question of whether procedurally and substantively it was proper to grant a summary judgment in favor of defendants.

Plaintiff-appellant Rachel Lavin filed this action on behalf of herself and all other high school women in the State of Illinois "who are, have been, and will continue to be denied participation in interscholastic athletic programs solely because they are female." The second amended complaint seeks injunctive and declaratory relief as well as damages for defendants' alleged denial to the named plaintiffs[1] and the class, solely because they are female, of the right to participate "on high school varsity athletic teams on which men are allowed" and the right to participate "in high school programs in a manner which provides as full and equal an educational opportunity as that provided men." The primary claim is that the denial of these rights on the basis of plaintiffs' sex violates the Equal Protection Clause of the Fourteenth Amendment.

The complaint alleges that Lavin, who was a senior at Mather High School in Chicago, Illinois "tried out," with another woman student, for the Mather High School varsity basketball team. Those who show sufficient skill at the "tryouts" are called back for "preliminaries." The varsity team is chosen from those students participating in the "preliminaries." In response to Lavin's question as to why neither were asked back, Donald Fontana, athletic coach of Mather High School, informed her "that he would and could not as he was bound by Division A, Art. II, § 24 of the By-Laws of the IHSA [Illinois High School Association] which states: 'No school belonging to this Association shall permit boys and girls to participate with or against members of the opposite sex in the same interscholastic athletic activity.'" The complaint specifically alleges that Lavin was "eligible, ready, willing and able to participate in high school interscholastic varsity basketball."

Lavin requested a preliminary injunction and in support of defendants' opposition to the granting of such relief the affidavit of coach Fontana was filed. In his affidavit Fontana stated that in a conversation with Lavin he had shown her "the Chicago Public High School Athletic Association's Basketball Rules and Regulations, 1973–1974 which state in part: 'Varsity Teams: Shall consist of all boys eligible under the rules of the Board of Control.'" Fontana further stated that he had not told either of the women

> that in the absence of the applicable rule that they would have been called back for the next level of the tryouts, and, in fact, in the absence of such

---

[*] The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. The other named plaintiff, Patricia Giannis, voluntarily dismissed her claim and is no longer a part of this suit.

rule they would not have been called back for the next level of tryouts because neither possessed the necessary ability to participate on the school's varsity basketball team.

A motion to dismiss the second amended complaint for a failure to state a cause of action or in the alternative for a grant of summary judgment was filed on behalf of defendant Illinois High School Association.[2] Motions to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted, to strike the complaint, and for summary judgment were filed on behalf of defendants Chicago Board of Education and James F. Redmond, Superintendent of the Chicago Board of Education. No affidavits accompanied any of these motions.

At a hearing concerning a briefing schedule for memoranda regarding these motions the attorney for plaintiff requested additional time to respond because there were both motions to dismiss and summary judgment motions pending. The district judge replied that he would "put the motion for summary judgment aside for the time being until I decide the motions to dismiss." The district judge ended the hearing by saying: "So I will consider the motions to dismiss or strike along with any affidavits that may be submitted in support of that type of motion and will delay any decision on motion for summary judgment until I decide the other motions first."

When the district judge did rule, his judgment granted the "defendants' motion for summary judgment with respect to complaint of Rachel Lavin." The memorandum opinion indicated that Fontana's affidavit filed in regard to the preliminary injunction motion, had stated that Lavin would not have been called back for further proceedings be-

cause she lacked the necessary ability. Since this affidavit was not countered, the district judge found there was "no genuine issue of material fact." He concluded that: "In the absence of an actual case or controversy, this Court lacks jurisdiction , and the defendants' motion will be granted as one for summary judgment."

I

■ The first question we must address is whether this case is moot since plaintiff Lavin has graduated from high school. She had already graduated by the time that the district court ruled, but that court held that the case was not moot. We agree that the matter is not moot since the complaint seeks damages.[3]

II

■ We turn to the question of whether the district court's decision was proper. Defendants seem to contend that the ruling was actually not a grant of summary judgment, but rather a dismissal for either lack or standing or lack of a case or controversy. We cannot agree with this analysis. Admittedly, the district court apparently decided that Lavin would not have been able to play on the varsity basketball team even if she were male and therefore suffered no harm herself as a result of a rule prohibiting females. But such a finding was a factual one. The complaint clearly alleges contrary facts that show that Lavin was harmed by this rule and that a controversy over this alleged sex discrimination does exist. The district court's decision must be viewed as one granting summary judgment.

■ The issue then becomes whether summary judgment should have been granted. We find that it should not

---

2. Pursuant to a stipulation between the parties, this appeal was previously dismissed as to the Illinois High School Association and Harry Fitzhugh, that association's executive secretary.

3. Given the present state of the record we express no view on the issue of whether damages could be awarded.

have been. Even on the basis of Fontana's affidavit alone we do not think it is clear that there is no genuine issue as to any material fact. Lavin's complaint alleges that Fontana told her that "he would and could not" ask her back for "preliminaries" because "he was bound" by the by-laws of IHSA. Moreover, she alleges that she was "ready, willing and able to participate in high school interscholastic varsity basketball." Coach Fontana's affidavit only says that in the absence of the rule Lavin would not have been called back. It does not state that his decision not to ask her back was made without consideration of the rule or the fact that she was female.

█ More importantly, Lavin was not given an adequate opportunity to counter this affidavit. Based on the district judge's statement that he was not going to consider the summary judgment motions at that time, there was no obligation on Lavin to file counter-affidavits or request discovery. Since the district judge said he was only going to rule on the motions to dismiss he must have decided to treat the Fed.R.Civ.P. 12(b)(6) motion as a Fed.R.Civ.P. 56 summary judgment motion. But he surely failed to give Lavin a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56" as required by Fed.R.Civ.P. 12(b).

In a case such as this where the motivation behind coach Fontana's decision is in issue, summary judgment should be used cautiously and all procedural requirements given strict adherence: "It is especially important to observe these procedural requirements [fair opportunity to conduct such discovery as may be necessary] when evidence of motivation is of critical importance." *Illinois State Employees Union v. Lewis*, 473 F.2d 561, 565–66 (7th Cir. 1972); *Tankersley v. Albright*, 514 F.2d 956, 963 n. 8 (7th Cir. 1975). Lavin might have desired to cross-examine Fontana or present her own affidavits concerning her basketball

skills. She was unfairly prevented from so doing.

The judgment of the district court is reversed and the case is remanded for further proceedings. In accordance with the policy underlying Circuit Rule 23, this case shall be reassigned to a different district court judge unless all the parties request that it remain before the same judge.

PELL, Circuit Judge (dissenting).

Apparently assuming that the denial to Rachel Lavin of the right to participate in tryouts for the varsity high school basketball team, an extracurricular or fringe aspect of the public educational process,[1] has resulted in a deprivation to her of a fundamental constitutional right, although any claim that Lavin can now properly represent a class of which she no longer is a member by virtue of her graduation which would also seem to moot any claim for declaratory or injunctive relief, the majority opinion sends this case back to the district court for further proceedings, which if it is a continuing or live controversy is so solely because the second amended complaint seeks damages in the amount of $200. This case is such a prime example of *de minimus non curat lex*, that to me it appears beyond question the "controversy between the parties has thus clearly ceased to be 'definite and concrete' and no longer 'touch[es] the legal relations of parties having adverse legal interests.'" *DeFunis v. Odegaard*, 416 U.S. 312, 317, 94 S.Ct. 1704, 1706, 10 L.Ed.2d 164 (1974). See also, *Flast v. Cohen*, 392 U.S. 83, 95, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Data Processing Service v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); and *Barlow v. Collins*, 397 U.S. 159, 164, 167–173, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

I am not unmindful that great and far-reaching principles have been established through litigious processes where the economic incentive of personal mone-

---

1. *Cf., San Antonio School District v. Rodriguez*, 411 U.S. 1, 35–37, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

tary gain was slight. Here, however, none of us surely entertain any illusion that the underlying issue will not receive appropriate attention by litigants who can bring to the issue the forcefulness of one who is still in a position to benefit by being permitted to participate in the particular sports program. Indeed, in the present case the district court in denying the motion to dismiss as to the co-plaintiff, who was still in high school, stated that this was "a serious piece of litigation which should be decided on its merits." The co-plaintiff, however, declining the district court's invitation to file an amended complaint dismissed her action. This, of course, made the judgment as to Lavin final and appealable.

Whatever our opinions may be as to the constitutional rights of girls to participate on an equal basis with boys in high school competitive contact sports,[2] this case does not appear to me to be the proper vehicle for determining what those rights may be. We complain of the overload in the federal courts, yet by the majority opinion we are allowing a litigant with a now paltry and insignificant interest to keep litigation alive. We also are once more interfering under the supposed mantle of constitutionality with the day-to-day administrative processes of operating a secondary school.

While I would affirm the judgment of the district court for the reasons given herein, I also note that the district court's action under well-established summary judgment procedures appears to be proper. The affidavit of Fontana, the physical education teacher, was filed on February 19, 1974, stating, *inter alia*, that Lavin and another girl who had tried out with her in the absence of the rule "would not have been called back for the next level of tryouts because nei-

ther possessed the necessary ability to participate on the school's varsity basketball team." In her original complaint, Lavin had alleged that her preclusion was "not because of lack of skill," but in her unverified second amended complaint filed on March 14, 1974, subsequent to the Fontana affidavit, she merely alleged that she continued to be "eligible, ready, willing and able to participate in high school interscholastic basketball." The only defendants involved in this appeal filed their motion to dismiss *and for summary judgment* on April 5, 1974. It is true that the district court stated that the motion for summary judgment of the Illinois High School Association, which association has been dismissed on this appeal, was "continued until there is a decision on motions to dismiss." I fail to find a corresponding entry as to the summary judgment motion of the Chicago school authorities, the only appellees now involved in this appeal. Nearly four months later, without any affidavit having been filed by Lavin as to her athletic qualifications entitling her to further tryouts, the district court sustained the summary judgment as to Lavin, stating, *inter alia*, that she "was given an opportunity to participate and found to be unqualified. She has not countered this affidavit, and therefore there is no genuine issue of material fact with respect to her complaint." I agree. Under Rule 5, Fed.R.Civ.P., Lavin was not entitled to rest upon the allegations of her pleadings even if they by some stretch of language could be considered as asserting that she had the requisite athletic ability.

In sum, what is left of the present suit strikes me as being a *tempête dans un verre d'eau* which should be appropriately interred by an affirmance. I therefore respectfully dissent.

---

**2.** Being a native, as are the other members of the panel, of a state in which the opinion has been expressed that the calibre of the varsity basketball team was of somewhat greater consequence than the quality of the curriculum, I might feel justified in venturing the opinion that in the middle portion of the United States at least, insofar as this particular sport is concerned, the prime requisite for being on the team would not be the retention of an attorney but the demonstration that the skill and ability was possessed to increase the team's chances of winning its engagements.