Jerome Scott EDDINS, Plaintiff,

v.

GENEVA PHARMACEUTICALS,
INC., Defendant.

No. 3:93–CV–754.

United States District Court,
E.D. Tennessee,
at Knoxville.

Dec. 5, 1993.

Perry H. Windle, III and David A. Burkhalter of Burkhalter & Windle, PC, Knoxville, TN, for plaintiff Jerome S. Eddins.

Robert N. Townsend of Arnett, Draper & Hagood, Knoxville, TN, for defendant Geneva Pharmaceuticals, Inc.

### MEMORANDUM AND ORDER

PHILLIPS, United States Magistrate Judge.

This case is before the undersigned pursuant to the provision of 28 U.S.C. § 636(c), by consent of the parties and by order of the Honorable Leon Jordan, United States District Judge [Doc. 14]. Defendant has filed a motion for summary judgment [Doc. 9], as amended [Doc. 11], and supported by memorandum [Doc. 10]. Plaintiff has filed a response in opposition to defendant's motion for summary judgment [Doc. 17], and defendant has filed a reply to plaintiff's response and objection to defendant's motion for summary judgment [Doc. 18].

Defendant asserts that it is entitled to entry of summary judgment in its favor on the ground that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law because plaintiff's claim against it is based solely upon allegations that he was terminated from his employment as a result of his service on jury duty and, defendant asserts, the undisputed record reflects that plaintiff's employment was terminated for reasons unrelated to his jury service. Defendant further asserts that plaintiff has failed to establish that his jury service was a substantial factor motivating his discharge and has likewise failed to establish a demonstrable causal relationship between termination of his employment and his jury service. Accordingly, defendant argues, plaintiff has failed to establish a *prima facie* case of retaliatory discharge under applicable Tennessee law. Since defendant asserts that no genuine issue exists as to any material fact and since plaintiff has failed to establish he was discharged for jury service, defendant concludes that it is entitled to summary judgment as a matter of law under Rule 56, Federal Rules of Civil Procedure. In the

event the court does not grant summary judgment on all of plaintiff's claims, defendant further asserts that plaintiff has failed to mitigate his damages entitling defendant to partial summary judgment limiting any possible recovery of plaintiff should this case go to trial and plaintiff prevails [Docs. 9, 11]. Defendant relies upon the entire record, including, but not limited to, depositions of plaintiff, Carl Davis, and Sharon Jones, excerpts of which are attached to defendant's motion for summary judgment, as well as affidavits of Brenda Headrick, Ron Sanders and Greg Chambers, defendant's responses to plaintiff's interrogatories Nos. 9, 4, and 1, and defendant's response to plaintiff's document request No. 2 [Doc. 10, w/attachments].

In her affidavit filed in support of defendant's motion for summary judgment, Brenda Headrick relates that she has been employed by Geneva Pharmaceuticals, Inc. [Geneva], since April 1985 and her direct supervisor is Carl Davis. Mr. Davis was also the supervisor for Jerome Scott Eddins prior to termination of Mr. Eddins' employment, Ms. Headrick states, and during the period of time when she worked at Geneva under Mr. Davis, there has always been a lot of joking back and forth between employees and Mr. Davis as well as joking among employees themselves. In this connection, Mrs. Headrick relates, that prior to Mr. Eddins' termination of employment and while he was serving on jury duty, she recalled Mr. Davis making some comments to Mr. Eddins to the effect that, "I don't know why I'm paying you for a week's work, you're only working two days," but that these comments were always made in a joking manner and she always took them that way [Doc. 9, Headrick Aff. attached].

Ron Sanders relates in his affidavit that he has been employed by Geneva since 1983 and his direct supervisor is Carl Davis, who was also the supervisor for Jerome Scott Eddins prior to termination of Mr. Eddins' employment. Mr. Sanders relates that while he has worked at Geneva under Mr. Davis there has always been a lot of joking back and forth between employees and Mr. Davis, as well as joking among employees themselves. In that connection, prior to Mr. Eddins' termination of employment and while he was serving on jury duty, Mr. Sanders recalls Mr. Davis making some comments to Mr. Eddins regarding jury service and his pay, but he does not recall the exact words, but he believes that these comments were always made in a joking manner and he always took them that way. While he cannot state specifically how Mr. Eddins viewed those remarks, Mr. Sanders never heard anything from Mr. Eddins indicating that he was offended by any of those comments [Doc. 9, Sanders Aff. attached].

In his affidavit filed in support of defendant's motion for summary judgment, Greg Chambers relates that he has been employed by Geneva since 1986 and his direct supervisor is Carl Davis, who was also the supervisor for Jerome Scott Eddins prior to his termination. During the period of time he has worked at Geneva under Mr. Davis, Mr. Chambers relates that there has always been a lot of joking back and forth between employees and Mr. Davis, as well as joking among employees themselves. In that connection, prior to Mr. Eddins' termination of employment and while he was serving on jury duty, Mr. Chambers recalls Mr. Davis making some comments to Mr. Eddins regarding jury service and his pay, that he does not recall the exact words, but states that these comments were always made in a joking manner and he always took them that way. While he cannot state specifically how Mr. Eddins viewed these remarks, Mr. Chambers relates that he never heard anything from Mr. Eddins indicating that he was offended by any of those comments [Doc. 9, Chambers Aff. attached].

Plaintiff has responded in opposition to defendant's motion for summary judgment arguing that clearly there are genuine issues of material facts as to whether plaintiff's grand jury service was a substantial factor in his termination from employment and that the issues of credibility are for the jury to decide. In addition, plaintiff asserts that there is evidence from which a reasonable jury could conclude that plaintiff has made reasonable and good faith efforts to mitigate his damages and that this issue is likewise inappropriate for summary judgment and,

accordingly, defendant's motion for summary judgment should be denied [Doc. 17]. Plaintiff has filed in support of his response to defendant's motion excerpts from the depositions of plaintiff, Jerome Scott Eddins, warehouse supervisor Carl Davis, distribution manager Sharon Jones, Greg Chambers, Ron Sanders, and Brenda Headrick [Doc. 17, Collective ex. 1], as well as plaintiff's summons for jury service [Doc. 17, ex. 2], section 22-4-108, Tennessee Code Annotated [Doc. 17, ex. 3], plaintiff's response to defendant's first set of interrogatories and requests to produce [Doc. 17, ex. 4], claimant's statement [Doc. 17, ex. 5], disciplinary action report [Doc. 17, ex. 6], and a psychological evaluation by Dr. Diana L. McCoy [Doc. 17, ex. 7].

In its reply to plaintiff's response and objection to defendant's motion for summary judgment, defendant takes issue with some of the facts set forth by plaintiff in its response and argues, once again, that plaintiff has failed to make out a *prima facie* case, that there is no genuine issue as to any material fact, that the record in this case fails to support plaintiff's claim that he was discharged for service on jury duty, and that defendant is entitled to summary judgment as a matter of law.

### *Statement of Facts*

Plaintiff began his employment with Geneva in December 1986. He was employed at the Knoxville distribution warehouse and his job duties consisted of checking to make sure lot numbers were correct according to the order, pulling, packing, and shipping drugs (Eddins Dep., pp. 56-57). Carl Davis, the warehouse supervisor, was plaintiff's supervisor and Mr. Davis reported to the distribution manager, Sharon Jones (Eddins Dep., p. 58; Jones Dep., pp. 4-5; Davis Dep., pp. 9-10). Plaintiff received a summons from Knox County Criminal Court to serve on jury duty beginning July 6, 1993, and the next work day plaintiff presented the summons to his supervisor, Carl Davis (Eddins Dep., p. 87; Doc. 17, ex. 2 attached).

When plaintiff reported for jury duty on July 6, 1993, he was informed that he would be serving on the grand jury which met on Monday, Tuesday, and Wednesday of each week for a period of four (4) months (Eddins Dep., p. 95). Plaintiff advised his supervisor that he would be required to serve on the grand jury and provided his supervisor with a copy of section 22-4-108, Tennessee Code Annotated, the statutory provision governing jury duty in the state of Tennessee (Eddins Dep., p. 96, ex. 3 attached). Mr. Davis advised plaintiff that he would be required to work from 7:00 a.m. to 8:00 a.m. prior to serving on jury duty, but when plaintiff complained to Davis and Jones that he did not have time to come to work and then find a place to park for jury duty, he was no longer requested to report to work for the hour prior to jury service (Eddins Dep., pp. 91-93).

When Mr. Davis told Ms. Jones about Mr. Eddins jury duty, her response was, "What, another one?" (Davis Dep., p. 56). Ms. Jones also stated that, "I think they are going to summons everyone that works at Geneva sooner or later." (Jones, p. 34). Plaintiff asserts that approximately three (3) weeks after the start of his jury duty, Davis began making derogatory comments concerning Eddins jury service. Davis handed plaintiff his paycheck and told him, "I don't feel that you deserve to get this paycheck since your only working two days a week." (Eddins Dep., p. 168). Plaintiff further asserts that Davis made statements to him that, "Since you only work two days, you can do the job of two people," and "You haven't worked but two days this week. You ought to be rested up to do the job of two or more people." (Eddins Dep., pp. 174-75).

Defendant asserts that plaintiff asked Ms. Jones and Mr. Davis to get him out of jury service because he was going to lose a lot of overtime (Davis Dep., pp. 58-59; Jones Dep., pp. 24-26), a statement plaintiff denies (Eddins Dep., pp. 89-90). Plaintiff contends that he reached some sort of agreement with Davis whereby after his first week of jury duty he would no longer be required to bring any documentation as to the days he served on jury duty until completion of that duty (Eddins Dep., p. 97), which was denied by Davis (Jones Dep., p. 31).

Plaintiff asserts that Mr. Davis told him, "I tell you one thing, you better be here to work

every overtime hour if we pay you to go to jury duty" (Eddins Dep., pp. 177–178; Chambers Dep., p. 8), and "I shouldn't have to pay you because you haven't worked all week" (Eddins Dep., pp. 181–83; Chambers Dep., pp. 8–9). At a luncheon provided to employees by defendant, plaintiff asserts that he was told by Davis, "I don't think you deserve this lunch because you're on jury duty," (Eddins Dep., p. 184; Chambers Dep., p. 9), and on other occasions Davis stated to plaintiff, "If you are not draining the company for insurance purposes you are draining it for jury money" (Eddins Dep., p. 184).

Plaintiff asserts that Mr. Davis also commented that if plaintiff got out of jury duty early and didn't report back to work, an example would be made of him (Chambers Dep., pp. 11–12),[1] and Mr. Davis admitted telling plaintiff, "Man, I wish I could get a paycheck for just working two days a week. How can I get on jury duty?" (Davis Dep., p. 64), and Mr. Davis confirmed that he made a statement to the effect that if plaintiff was not draining the company for insurance purposes, he was draining it for jury money (Davis Dep., pp. 68–69).

Defendant asserts that Davis made these statements jokingly (Davis Dep., pp. 66–69) and other employees have supported this assertion by defendant that statements made by Davis regarding plaintiff's jury service were made in a joking fashion (Doc. 9, Headrick, Sanders, and Chambers Affs. attached). Plaintiff asserts, on the other hand, that he did not take these statements as jokes, but instead found them very embarrassing and humiliating (Eddins Dep., p. 177). Plaintiff points out that Chambers and Sanders did not know how plaintiff took these comments and Sanders did not see plaintiff laughing (Sanders Dep., pp. 15, 18–19; Chambers Dep., p. 8). Ms. Headrick in her deposition stated that sometimes plaintiff had a comeback, sometimes he just got up and walked off, and sometimes he didn't answer at all (Headrick Dep., p. 13), and Ms. Headrick further testified that she would not think the

comments were funny if they were made in relation to her (Headrick Dep., p. 13).

Plaintiff asserts that in August 1993, he made a verbal request for vacation time off for September 7–8 (Eddins Dep., p. 145), and Davis agreed to check the schedule and plaintiff was later told to fill out a vacation request form, which he completed and submitted to Davis, and Davis approved his request for vacation (Eddins Dep., pp. 147–148).

Defendant asserts that plaintiff was asked numerous times during his deposition about his alleged oral request for vacation and he emphatically stated that the request was made within a day or two of August 15, 1993. Defendant asserts that Davis was out of the state on National Guard duty at Fort Stewart, Georgia, from August 4, 1993 until he returned August 24, 1993, and this supposed oral request could not possibly have occurred.

On September 7, 1993, Ms. Jones telephoned plaintiff at his home and left a message on his answering machine, "Where is our jury duty report?" (Eddins Dep., pp. 107–08, 109), plaintiff replied back to Ms. Jones or Mr. Davis and was advised that they wanted a specific statement of the time in and time out that plaintiff had served on the grand jury (Eddins Dep., pp. 107–111). Plaintiff advised that he would get whatever he could but that they did not have time in and time out sheets because the grand jury days were automatically set and plaintiff was to check and see what documents he could get from the jury clerk and defendant was going to attempt to get time sheets through the jury clerk also (Eddins Dep., pp. 118–20). Plaintiff asserts that Davis had previously agreed he could supply a grand total sheet of all the days he served when his grand jury duty was over (Eddins Dep., pp. 96–97), a statement denied by Davis to Ms. Jones (Jones Dep., p. 31).

On Monday, September 13, 1993, plaintiff called Ms. Jones to confirm that she had received the requested information (Eddins Dep., p. 118), Davis took the telephone call,

---

1. Chambers actually testified that he could not remember if the statement was "said in those words" (Chambers Dep., p. 11).

and Eddins asked him if everything was okay. Eventually plaintiff spoke on the telephone to both Mr. Davis and Ms. Jones (Eddins Dep., pp. 118, 122–23), and Ms. Jones asked plaintiff if he had served on jury duty on September 7 and 8. Plaintiff asserts that he advised Ms. Jones that he was on vacation at that time (Eddins Dep., p. 137), that Mr. Davis had approved his vacation request, and if there was any problem Mr. Davis could, "Get my vacation sheet out of my mailbox" (Eddins Dep., pp. 139–140).

Defendant has an entirely different version of this telephone conversation. According to defendant, Mr. Davis and Ms. Jones asked plaintiff if he had served on jury duty continuously every Monday, Tuesday, and Wednesday from July 6 and plaintiff replied that he had. When plaintiff was specifically asked if he had served on jury duty on September 7 and 8, plaintiff replied that he did (Jones Dep., pp. 63–64; Davis Dep., pp. 91–92, 98–100). In a subsequent telephone conversation which occurred sometime between September 13 and 15, 1993, defendant asserts, plaintiff stated that he had simply "messed up" or "screwed up," that he had been unaware that grand jury was not going to be in session the week of September 6, and claimed that he showed up at court on both September 7 and 8 only to realize that court was not in session. Defendant asserts that plaintiff told Ms. Jones and Mr. Davis that he was too embarrassed to contact the two of them and advise them of those circumstances and that plaintiff made this claim despite the fact that Ms. Jones had been advised by the court clerk that the jurors had been advised in advance that there were be no grand jury sessions during the week of September 6, 1993, but plaintiff did not work on those days. According to defendant, plaintiff pleaded with Mr. Davis and Ms. Jones for a second chance after admitting that he had "messed up" (Davis Dep., pp. 92–93; Jones Dep., pp. 60, 65–66).

Defendant points out that no written vacation request form was ever submitted by plaintiff and plaintiff has failed to produce any such form, that it is uncontested that filling out such a request form is standard procedure to be followed when one wants to change his/her vacation, and that plaintiff's coworkers, Sanders, Headrick and Chambers, knew nothing whatsoever about any supposed vacation request [Doc. 18, p. 5; Headrick Dep., p. 15; Sanders Dep., p. 21).

On September 15, 1993, plaintiff met with Ms. Jones and Mr. Davis who told plaintiff they were disappointed with him for stealing time from the company. Plaintiff wanted to verify he had vacation approval and he asked Davis, "Carl, is there something you might need to say? Is there something you know about?" but Davis held his head down and would not say a word (Eddins Dep., p. 160). Plaintiff was given a disciplinary action report, which he refused to sign, relating that the reasons for his termination were:

1. Failure to follow company policy and procedures, which requires an employee on jury duty to report back to work when jury is not in session. Scott did not have jury duty on the 7th and 8th of September 1993; and

2. Employee lied to supervisor on 9/15/93 (supervisor and manager in separate conversations) asked Scott if he has been attending jury duty on Monday, Tuesday and Wednesday as scheduled since July 1993 except for Monday 9/6/93. The attached documents will support the fact that jury duty was not held on 9/7/93 nor 9/8/93 and Scott said yes he has not missed any days. Scott did not report back to work or call his supervisor and inform him of this matter. He then lied to district manager by stating that the grand jury had met consistently since 7/6/93 with the only exception of 9/6/93. Action taken is termination of employment, effective 3:30 p.m. 9/16/93.

[Eddins Dep., p. 161; Doc. 17, ex. 6 attached].

Plaintiff asserts that following his termination he went to his personal mailbox and found that it had been cleared out. According to plaintiff, this is where the vacation request approval had been kept (Eddins Dep., pp. 148–149). Subsequently, a secretary for defendant gave Mr. Chambers papers found in plaintiff's employee mailbox and requested Mr. Chambers to give the papers to plaintiff (Chambers Dep., p. 14).

Defendant asserts that Mr. Davis and Ms. Jones made the decision to terminate plaintiff's employment after checking with the corporate headquarters for defendant and talking to the corporation's human resources manager and the director of distribution, both of whom, after being advised of the circumstances, concurred in the decision.

Defendant also argues that plaintiff has failed to mitigate his damages since plaintiff identified a number of jobs he has held since he left defendant's employment and which he voluntarily quit. At one such position, with Auto–Chlor Systems in Knoxville, plaintiff was making $400 a week in salary which was more than the $310 per week he was making at defendant corporation and defendant asserts that plaintiff voluntarily quit his employment at Auto–Chlor Systems.

Plaintiff asserts, on the other hand, that following his termination by defendant, he has applied to at least 40 places for employment [Doc. 17, ex. 4], has been employed by various employers since his termination and is presently employed at Grace Baptist Church doing utility work, including setting up for Sunday school, and doing general cleaning (Eddins Dep., pp. 16–36). As a result of his termination from employment by defendant, plaintiff alleges, he has suffered emotional injuries and has been treated by a clinical psychologist [Doc. 17, ex. 7 attached].

### Statement of Case

Jurisdiction of this court is founded upon diversity pursuant to 28 U.S.C. § 1332, venue is asserted under the general venue provisions of 28 U.S.C. § 1391(b) and (c), and the amount in controversy is alleged to be in excess of $50,000. Jurisdiction and venue are not in dispute.

Plaintiff asserts that defendant, at all times pertinent to this cause of action, was an employer subject to the provisions of sections 22–4–108 and 39–16–514, Tennessee Code Annotated, that plaintiff was an employee of defendant during all pertinent times, and that a substantial factor in defendant's decision to terminate plaintiff was his jury service on the Knox County grand jury. Plaintiff alleges that he had a legal and civic duty to honor the summons to report for jury duty and had plaintiff failed to appear he would have been subject to arrest and could have been held in contempt of court and fined pursuant to section 22–2–307, Tennessee Code Annotated. Plaintiff alleges further that defendant was under a legal duty to excuse plaintiff from work for jury duty pursuant to section 22–4–108, *et seq.*, Tennessee Code Annotated, and defendant was under a legal duty not to retaliate against plaintiff for having honored the summons for jury duty.

Plaintiff alleges that his jury service was a substantial factor in defendant's decision to terminate him and defendant's termination of plaintiff is contrary to the public policy of the state of Tennessee. Plaintiff has sued defendant for retaliatory discharge and asserts that he has incurred a loss of wages and benefits, both past and future, sustained significant emotional distress, and injury to his capacity to earn, and has further suffered humiliation and embarrassment. Plaintiff avers further that defendant's actions were intentional, malicious, and/or reckless and otherwise sufficient to justify the imposition of punitive damages. Plaintiff has sued defendant pursuant to section 22–4–108, Tennessee Code Annotated, and pursuant to the common law of wrongful discharge [Doc. 1].

Defendant has specifically denied that it retaliated against plaintiff in any manner whatsoever in regard to his service on jury duty, and further has denied that it violated Tennessee Code Annotated § 22–4–108 or that its discharge of plaintiff violated any common law wrongful discharge theory recognized by the state of Tennessee. Rather, defendant affirmatively asserts plaintiff was terminated due to his failure to report to work on September 7–8, 1993, when the grand jury did not meet and he was not required to be on jury duty. Defendant further asserts that plaintiff was terminated because he made misrepresentations to both his distribution supervisor and the distribution manager regarding his non-attendance on jury duty on those dates [Doc. 3].

### Law Applicable to Rule 56, Federal Rules of Civil Procedure

The decisions of the United States Supreme Court in three recent cases, referred

to by some commentators as the summary judgment trilogy,[2] has breathed new life into what was once considered a procedural hurdle but essentially a waste of time for both litigants and the courts. An excellent analysis of the Supreme Court's decisions in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is found in *Street v. J.C. Bradford Co.,* 886 F.2d 1472 (6th Cir.1989). In that decision, Judge Bertlesman painstakingly analyzed the Supreme Court's decisions and set forth the following directives to be gleaned from the Court's rulings:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict[3] standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respon-

dent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street v. J.C. Bradford Co., supra* at 1479–1480.

■ The bottom line of the summary judgment trilogy of cases is that the Court, when ruling upon a motion for summary judgment after the parties have had adequate time to develop their proof, must consider the motion as it would on a motion for judgment as a matter of law after the plaintiff has presented its proof and rested its case.

■ The United States Supreme Court has ruled that summary judgment is appropriate if "the record taken as a whole could not lead a rational trier of fact to find for the

2. Childress, "A New Era for Summary Judgments: Recent Shifts at the Supreme Court", 116 Federal Rules Decisions 183, 184 (1987); Stempel, "A Distorted Mirror: The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict and the Adjudication Process", 49 *Ohio St.L.Rev.* 95, 107–08 (1988); Friedenthal, "Cases on Summary Judgment:

Has there been a Material Change in Standards?", 63 *Notre Dame L.Rev.,* 770, 771 (1988).

3. Now denominated "judgment as a matter of law" under Rule 50, Federal Rules of Civil Procedure.

non-moving party" (*Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). The non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure. In determining whether there is a genuine issue for trial, the court must draw all reasonable inferences from the facts in the light most favorable to the non-moving party. *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. at 1356. *See also, Conde v. Velsicol Chemical Corp.*, 24 F.3d 809 (6th Cir.1994); *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229 (6th Cir.1994).

### LAW APPLICABLE TO THIS CASE

██ The Tennessee Supreme Court has clearly recognized the tort action of retaliatory discharge stemming from an employee's termination for performance of jury duty, and has further held that the remedies of reinstatement and reimbursement for lost wages and work benefits are not the exclusive remedies available to the discharged employee. Rather, the statutory remedies set forth in section 22–4–108, Tennessee Code Annotated, are cumulative and a discharged employee may pursue a common law remedy in damages. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn.1992). Although the Tennessee Supreme Court has not set forth specifically the evidence required to establish a *prima facie* case of retaliatory discharge for performance of jury duty, it has set forth the elements necessary to establish a cause of action for discharge in retaliation for asserting a workers compensation claim, and the language utilized by the Tennessee Supreme Court makes clear that the same elements would apply to a jury duty retaliatory discharge case. *Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn.1993).[4] The Tennessee Supreme Court indicated that the following elements are necessary to establish a cause of action for retaliatory discharge:

(1) the plaintiff was an employee of the defendant at the time of the injury;

(2) the plaintiff was required to serve on jury duty;

(3) the defendant terminated the plaintiff's employment; and

(4) the employee's jury service was a substantial factor in the employer's motivation to terminate the employee's employment.

*Anderson v. Standard Register Co.*, 857 S.W.2d at 558. *See also, Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441 (Tenn.1984); *Johnson v. St. Francis Hosp., Inc.*, 759 S.W.2d 925 (Tenn.App.1988); *Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422 (Tenn.App. 1992).

██ Plaintiff asserts that he has demonstrated sufficient evidence to establish this cause of action because (1) he was an employee of defendant at the time he was summoned for jury duty; (2) plaintiff served on jury duty; (3) defendant terminated plaintiff's employment; and (4) plaintiff's jury duty service was a substantial factor in the employer's motivation to terminate his employment [Doc. 17, p. 11]. Defendant asserts, on the other hand, that plaintiff cannot establish a *prima facie* case because the fourth element proves fatal to his claim. Defendant asserts that plaintiff has offered no credible proof that he was terminated by defendant because of his jury service. To the contrary, defendant argues, plaintiff was terminated because of his failure to report to work on days when he was not on jury service and his subsequent actions of lying to his employer regarding such service. Defendant argues that it terminated plaintiff after it became aware that plaintiff failed to report to work on September 7–8, 1993, during which time the grand jury did not meet, and when plaintiff was asked if he had served on jury duty on September 7–8, he falsely told his supervisors that he had served.

As the statement of the facts set forth *supra* makes abundantly clear, there are numerous contradictions in the testimony as to

---

**4.** In fact, in *Anderson v. Standard Register Co., supra,* the court did not limit its discussion of the quantum of evidence necessary to establish a *prima facie* case to those cases alleging retaliatory discharge as a result of an employee filing a workers compensation claim. Instead, the court stated that it had previously "not precisely articulated the elements of the cause of action for retaliatory discharge." *Anderson v. Standard Register Co.,* 857 S.W.2d at 557.

the events leading to plaintiff's termination which have been developed through pretrial discovery in this case. Some of the issues of fact are tangential and possibly irrelevant to the subject matter involved in this case. One disputed series of facts, however, is central to the resolution of this case.

Plaintiff has stated under oath that he verbally requested to take vacation time on September 7–8, 1993, his supervisor, Carl Davis, told him that he would see if plaintiff could be spared those days, a couple of weeks later he asked his supervisor if he had thought any more about the vacation days, and his supervisor told him to fill out a vacation request form. Plaintiff has further testified that he filled out the vacation request form and gave it to his supervisor. The vacation request form was later placed in his mailbox, plaintiff took it out and read it, the vacation request was marked "approved," and plaintiff put it back in his employee mailbox. Plaintiff further testified that he noted his vacation days on a large wall-mounted board (Eddins Dep., pp. 140–150).

Plaintiff testified that when asked if he had served on jury duty on September 7 and 8, he stated to his supervisors that he was on vacation and that his request for vacation on September 7 and 8 had been approved (Eddins Dep., pp. 139–150).

On the other hand, Sharon Jones, defendant's distribution manager, testified under oath that she specifically asked plaintiff if he had served on jury duty on September 7–8, 1993, and he said, "Yes" (Jones Dep., pp. 63–64). Carl Davis, defendant's warehouse supervisor and plaintiff's immediate supervisor, testified under oath that he heard Ms. Jones ask plaintiff if he had served on jury duty on the 7th and 8th, and that at no time during any of his conversations with plaintiff, from the 6th on to his termination, did plaintiff say he was on vacation or even mention anything about vacation (Davis Dep., pp. 91–100). Moreover, Mr. Davis has testified that the conversation never occurred between Davis and plaintiff during which plaintiff advised Davis that the signed vacation request could be found in his mailbox for the 7th and 8th, and that Davis could go get it and see that it

had been approved (Davis Dep., p. 100). Davis further testified that in a conversation with plaintiff, plaintiff had stated that he had "messed up," "screwed up," "done a dumb thing," and that he was embarrassed about it. Davis further testified that plaintiff indicated to him in a telephone conversation that he went to the court on the 7th and 8th, that the court was not meeting, and that he did not go to work because he was "too embarrassed" (Davis Dep., pp, 93–94, 100–101).

Defendant asserts that plaintiff could not have verbally requested vacation time from Davis in the middle of August, 1993, because Davis was serving at the National Guard camp in Fort Stewart, Georgia, from August 4, 1993 until August 24, 1993 (Davis Dep., pp. 127–128). While defendant asserts that the undisputed proof establishes that this verbal request could not have been made because Davis was performing national guard duty during this period of time, the record does not support this unequivocal statement.

While plaintiff was positive in his testimony that he verbally requested vacation time on the 7th and 8th and made that request verbally to Mr. Davis, his testimony about when this verbal request was made is equivocal. Plaintiff did testify that the verbal request was made approximately "the middle of August," and he also testified, "the best of my recollection, it was two weeks before I actually got the days off. It was give or take two or three weeks there to—" (Eddins Dep., p. 142). When plaintiff was informed by counsel during his deposition that Mr. Davis was at national guard camp from about August 3 until August 24, and asked whether he could have asked Mr. Davis about the vacation days on August 15 when Davis was not there, plaintiff responded, "I don't know. I just know that I asked him. It was right in the middle of August when I asked him." (Eddins Dep., p. 145). Plaintiff further testified that at one time he remembered Davis coming into work in his fatigues but he could not recall accurately when that event occurred (Eddins Dep., p. 146).

Defendant asserts that plaintiff was terminated from his employment because plaintiff failed to follow company policy and procedures requiring an employee on jury duty to

report back to work when the jury was not in session, because plaintiff lied to his supervisors by informing them that he had served on jury duty on September 7–8, 1993, and because plaintiff lied to the distribution manager by stating that the grand jury had met consistently since July 6, 1993, with the only exception being September 6, 1993 [Doc. 17, ex. 6]. Thus, the issue of whether plaintiff informed Ms. Jones and Mr. Davis that he was not on jury duty on September 7–8, 1993, but was on approved vacation, is relevant and directly material to a determination of this case. It is, in fact, a central issue both as to an essential element of plaintiff's proof and defendant's defense.

■ As correctly noted by plaintiff, in determining what constitutes a genuine issue as to a material fact for purposes of summary judgment, the Sixth Circuit has ruled that an issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of an action. The fact is material and precludes granting of summary judgment if proof of that fact would have the effect of establishing or repudiating one of the essential elements of the cause of action or defense asserted by a party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

Defendant appears to argue, as did the defendant in *St. Claire v. Litho Color Services, Inc.*, 17 TAM 27–9, 1992 WL 120225 (Tenn.Ct.App.1992) (a copy of opinion attached to Doc. 17), that the element of proof requiring plaintiff to introduce evidence establishing that his discharge was causally related to his jury service could only be established by direct proof of a retaliatory motive on the part of the defendant. The Tennessee Court of Appeals has ruled, however, that an employee may meet this burden by putting on evidence that the discharge was sufficiently motivated by retaliation for exercising statutory rights or indirectly by showing that the employer's proffered explanation is unworthy of credence. The court of appeals in *St. Claire* held that plaintiff presented material evidence which could establish that the employer's proffered reason for her termination was pretextual and upheld the jury verdict for the plaintiff.

The court of appeals in *St. Claire*, after disagreeing with the defendant's argument that the causal connection between termination and filing a workers compensation claim must be established by direct evidence, succinctly stated:

The reason behind adopting the shifting burdens approach in this type of case is because very rarely will the plaintiff have direct evidence of the employer's retaliatory motive. Thus, under the shifting burdens approach, although the employee retains the ultimate burden of persuading the trier of fact that the discharge was in retaliation for exercising statutory rights under the workers compensation act, the employee may meet this burden by putting on direct evidence "that the discharge was significantly motivated by retaliation for her exercise of statutory rights *or* indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Buckner v. General Motors Corp.*, 760 P.2d 803, 807 (Okla.1988). *See also, Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 427 (Tenn.App.1992).

■ As noted by the Tennessee Court of Appeals in *St. Claire v. Litho Color Services, Inc., supra*, at p. 5, the Tennessee appellate courts have adopted a shifting burden approach for establishing liability in these lawsuits similar to that utilized by the federal courts in employment discrimination cases. *Compare, Johnson v. St. Francis Hosp., Inc.*, 759 S.W.2d 925 (Tenn.App.1988), with *Chappell v. GTE Products Corp.*, 803 F.2d 261, 266 (6th Cir.1986). The federal decisional law governing these type cases is quite fully developed. A three-step judicial procedure allocates the shifting burdens of production of evidence. The burden of production first rests with plaintiff to establish his *prima facie* case, then on defendant to articulate some legitimate non-discriminatory reason for the employee's rejection, and finally, again on plaintiff to show that defendant's reasons were pretextual. *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1164 (8th Cir.1985) (*quoting McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although the burden of

production shifts, the burden of persuasion remains at all times with plaintiff. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Merely making out a *prima facie* case, however, does not automatically insulate plaintiff from a summary judgment motion. The inference of discrimination created by the *prima facie* case is dispelled once the employer's reason is stated, until and unless the latter is shown to be a pretext. *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1067 (6th Cir.1990), *quoting Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989). Once an employer has articulated a legitimate, non-discriminatory reason for its action, the plaintiff is required to produce direct, indirect, or circumstantial evidence that his performance of jury duty was a factor in the determination to terminate him and that "but for" this factor he would not have been terminated. *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989).

In this case, plaintiff has come forward with evidence that he was an employee of defendant at the time he was summoned for jury duty, that he served on jury duty, that defendant terminated plaintiff's employment, and that, based upon plaintiff's testimony, plaintiff's jury duty service was a substantial factor in the employer's motivation to terminate his employment. Defendant, on the other hand, has produced direct testimony that plaintiff's jury duty service was not a substantial factor in the employer's motivation to terminate plaintiff's employment, and that plaintiff was terminated for a legitimate non-pretextual, non-retaliatory reason. That is, defendant terminated plaintiff for failing to report to work when he was not on jury duty, and for lying to his supervisors by stating that he was on jury duty on September 7 and 8, 1993, when in fact he was not.

█ A critical determination which must be made is whether plaintiff was excused from work on September 7–8 by approved vacation time and whether the employer's proffered explanation for terminating plaintiff is worthy of credence, and these determinations must be made by a jury. Whether plaintiff will be able to carry his burden of

establishing a causal connection between his termination and his jury service depends upon whether the jury finds plaintiff's evidence credible. In similar vein, whether defendant's proffered explanation for plaintiff's termination is worthy of credence depends upon whether the jury finds the testimony of defendant's witnesses credible. While plaintiff maintains the ultimate burden of proof on this issue, it is clear that plaintiff has produced more than a scintilla of evidence to support each element of his claim and there are genuine issues as to material facts in dispute in this case. The credibility of witnesses is peculiarly within the province of the jury, and a trial judge is not permitted to substitute his opinion of the credibility of the witnesses for that of the jury. *Wertham Bag Corp. v. Agnew*, 202 F.2d 119, 122–123 (6th Cir.1953). Therefore, since there are genuine issues as to material facts in dispute, defendant is not entitled to judgment as a matter of law under Rule 56, Federal Rules of Civil Procedure.

█ In like vein, the question of whether plaintiff did or did not mitigate his damages should likewise be left to the jury. As with any affirmative defense, defendant has the burden to prove the amount by which plaintiff's damages should be lessened (*Carden v. Westinghouse Electric Corp.*, 850 F.2d 996, 1004–1005 (3d Cir.1988)), and defendant further has the burden of proving availability of suitable and comparable substitute employment and lack of reasonable diligence on the part of the employee (*Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614 (6th Cir.1983)). The Tennessee Supreme Court has held that the measure of damages when an employee has been wrongfully terminated is the amount the employee would have earned had the employer not dismissed him, less what would have been earned, or might have been earned, in some other employment, by the exercise of reasonable diligence. The burden is on the employer to establish that the employee failed to exercise reasonable diligence in mitigating damages. *Frye v. Memphis State University*, 806 S.W.2d 170 (Tenn.1991). This is also an issue which must be decided by the jury.

### Conclusion

While the Supreme Court's summary judgment trilogy of cases may have ushered in a new era for summary judgments, a trial court is still required to approach the granting of summary judgment with due caution, and this is particularly true in employment discrimination cases and alleged violations of civil rights. *Hayden v. First National Bank of Mt. Pleasant, TX,* 595 F.2d 994 (5th Cir. 1979); *Lavin v. Illinois High School Ass'n,* 527 F.2d 58 (7th Cir.1975); Wright & Miller, *Federal Practice and Procedure* § 2732.2 (2d ed. 1983). After carefully evaluating defendant's motion, and for the reasons hereinabove set forth, defendant's motion for summary judgment and/or for partial summary judgment [Docs. 9, 11] is DENIED.

**IT IS SO ORDERED.**