In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 06-1958 & 06-2844 and 07-1216 & 07-1365

CINTAS CORPORATION,
a Washington Corporation,

*Plaintiff-Appellant*,

*v.*

DANIEL A. PERRY,

*Defendant-Appellee.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 8404—**Elaine E. Bucklo**, *Judge*.

———————

ARGUED FEBRUARY 5, 2007—DECIDED FEBRUARY 20, 2008

———————

Before EASTERBROOK, *Chief Judge*, and ROVNER and
SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Cintas Corporation alleged in
this suit that Daniel A. Perry, a former Cintas sales
manager, violated non-competition, non-solicitation, and
non-disclosure provisions of his employment agreement
when he left his job at Cintas to work for a competitor.
Cintas requested injunctive relief, damages resulting
from Perry's alleged contract breaches, and restitution.
The district court denied preliminary injunctive relief
and later granted Perry's motion for summary judgment.
The court held the non-compete clause was overbroad
and declined to exercise its discretionary authority to

rewrite it to make it reasonable and enforceable. The court also held the evidence was insufficient to create a jury issue on the alleged violations of the non-solicitation and non-disclosure provisions of the contract. Cintas appealed from this order. The district court later ordered Cintas to pay Perry's attorney's fees and costs pursuant to a costs-and-fees-shifting provision in the parties' contract. Cintas appealed this order as well, and the appeals were consolidated for oral argument and decision. Finally, the district court entered an order quantifying the amount of fees and costs reasonably incurred by Perry, and Cintas appealed this order. We consolidated this last of Cintas' appeals with the earlier ones and received additional briefing. We now affirm.

## I. Background

Cintas, a Washington corporation with its headquarters in Cincinnati, Ohio, is in the business of renting and selling corporate-identity uniforms and related products to customers in the United States and Canada. Perry was employed by Cintas from 1993 to 2003. He started as a Sales Representative; in 1995 he was promoted to Sales Manager; in 1997 he was promoted to Director of Sales Development and Training for Cintas' North Central Group; and finally, in 2000 he became a National Account Manager, with responsibility for Illinois and Indiana. As a condition of being hired, Perry entered into an employment agreement with Cintas, and with each subsequent promotion, he signed an updated and/or new employment agreement. The employment agreement in place at the time Perry resigned from Cintas contained a non-competition provision, a non-disclosure provision, a non-solicitation of employees provision, and an attorney's fees and litigation costs provision.

The first two of these provisions, in relevant part, state as follows:

Non-Competition provision:

> While Employee is employed by Employer, and for twenty-four (24) months after such employment ends for any reasons, Employee will not, either directly or indirectly, (i) be employed in a managerial or professional position by, consult for, engage in any Industries business for, or have any ownership interest in any of Employer's competitors named in the attached Appendix A, which will be updated periodically by Employer issuing to Employee a revised and dated list including names of new significant competitors or successors to any previously-listed competitors, or (ii) call on, solicit or communicate with any of Employer's customers or prospects for the purpose of obtaining any Industries business other than for the benefit of Employer. . .

Non-Disclosure provision:

> In performing duties for Employer, Employee regularly will be exposed to and work with Employer's Confidential Materials and Information. . . . While Employee is employed by Employer, and after such employment ends for any reason, Employee will not reproduce, publish, disclose, use, reveal, show, or otherwise communicate to any person or entity any Confidential Materials and Information of Employer unless specifically assigned or directed by Employer to do so. The covenant in this Subparagraph (a) has no temporal, geographical or territorial restriction or limitation, and it applies wherever Employee may be located.

The agreement uses the phrase "Confidential Materials and Information" to refer to:

confidential strategies and programs, which include expansion and acquisition plans, market research, sales systems, marketing programs, product development strategies, budgets, pricing strategies, identity and requirements of customers and prospects, methods of operating, service systems, computer passwords, other trade secrets and confidential information regarding customers, prospects and employees of Employer or of its customers and other information not known to the public . . . , giving Employer an advantage over competitors not aware of such Confidential Materials and Information.

Finally, the non-solicitation and attorney's fees and costs provisions state as follows:

Non-Solicitation of Employees provision:

While Employee is employed by Employer, and for twenty-four (24) months after such employment ends for any reason, Employee, acting either directly or indirectly, or through any other person, firm or corporation, will not induce or attempt to induce or influence any employee of Employer to terminate employment with Employer when Employer desires to retain that person's services. The covenant in this Subparagraph (b) has no geographical or territorial restriction or limitation, and it applies wherever Employee may be located.

Attorney's Fees and Costs provision:

If Employer sues Employee for an alleged breach of covenant(s) in this Paragraph 3 and the court rules that Employee has not violated such covenant(s), Employer will pay all litigation costs and expenses and Employee's reasonable attorney's fees necessarily incurred in the litigation.

Throughout his time at Cintas, Perry had access to confidential materials and information, including national account prospect data, contact information for Cintas' current customers, Cintas' cost for goods and services, prices paid by customers for Cintas' goods and services, profit models, and budgeting information. Perry also had access to electronic databases, certain of which were password protected. At several points during his employment with Cintas, Perry downloaded information from Cintas' computers onto two computer disks without Cintas' permission.

In May 2003, while Perry was employed by Cintas, he received a telephone call from the human resources director at Aramark Uniform Services, Cintas' largest competitor. After the call, Perry submitted a copy of his résumé to Aramark to be considered for a Vice President of Sales position for Aramark's western region. In June 2003, Perry visited Aramark to discuss the position; a month or two later, he submitted an unsigned copy of Cintas' employment agreement to Aramark. Perry discussed his pursuit of the Aramark position, in confidence, with two of Cintas' National Account Managers and with representatives of two Cintas customers.

On October 14, 2003, Perry signed an employment offer from Aramark, and one week later he notified Cintas his last day would be October 27. Perry began working at Aramark on October 28, 2003. Cintas alleges that Perry's employment by Aramark, a competitor, is a breach of the non-competition provision in the parties' agreement. Cintas also alleges the following specific instances of contractual breach: After commencing employment with Aramark, Perry accompanied another Aramark employee on a sales call to a Cintas customer. Perry remained in the car, however, and did not discuss the customer with the Aramark employee. Perry also conducted a telephone interview with a former Cintas

employee for a position at Aramark. He did not know at the time of the phone interview that the applicant had been employed at Cintas; he concluded the interview when he learned of that fact, and Aramark did not hire the candidate. Also, just before and briefly after leaving Cintas, Perry spoke to another Cintas sales manager who was considering a job at Aramark. Finally, Perry gave his Aramark assistant the two computer disks containing Cintas' information to help his assistant format an Aramark report.

The foregoing facts formed the basis of Cintas' claim that Perry breached his employment agreement by soliciting Cintas' customers for Aramark's benefit, recruiting Cintas' employees, disclosing Cintas' confidential materials, and working for a competitor of Cintas within two years of leaving Cintas' employ. Cintas sought injunctive relief, money damages resulting from Perry's alleged breaches, and restitution of compensation paid to Perry for breaches allegedly committed while he was still in Cintas' employ. Cintas initially moved for a preliminary injunction, which was denied. Perry then moved for summary judgment, arguing that the non-compete provision was overbroad and thus unenforceable, and that Cintas failed to establish that he solicited its customers, recruited its employees, or disclosed confidential materials. In opposing summary judgment, Cintas urged the district court to judicially modify the overbroad non-competition provision to protect Cintas' legitimate business interests. Cintas also argued that material issues of fact existed regarding whether Perry violated the non-solicitation and non-disclosure provisions of the agreement.

The district court granted Perry's motion for summary judgment, recognizing that it had the discretion to rewrite the overbroad non-compete provision but declining to do so. The court also held that Cintas offered no evidence suggesting Perry solicited Cintas' customers,

recruited its employees, or used the confidential information in his possession in violation of the agreement. Some months later, the court ordered Cintas to pay Perry's reasonable attorney's fees and litigation costs pursuant to the parties' agreement, but left open the amount. Ten months later, the court entered an order quantifying the amount of fees and costs.

Because of the piecemeal disposition of the case below, Cintas filed four separate notices of appeal related to this dispute. They are as follows: Cintas' first appeal, No. 06-1958, was taken from the district court's order granting summary judgment in favor of Perry. Several months later, Cintas filed an amended notice of appeal, which was docketed as No. 06-2844, from the district court's order holding that Cintas was required to pay Perry's costs and reasonable attorney's fees. Those two appeals were consolidated for purposes of briefing, oral argument, and disposition. In the interim, the district court entered its order awarding Perry $286,521.25 in attorney's fees and $21,027.37 in costs. Cintas filed its third notice of appeal from that order, which was docketed as No. 07-1216. Based on comments at oral argument, Cintas filed a fourth notice of appeal on February 16, 2007, incorporating the matters raised in the first consolidated appeal with the district court's order quantifying the attorney's fees and costs. Appeal Nos. 07-1216 and 07-1365 were subsequently consolidated for briefing and disposition purposes.

We now address all issues in the first and second consolidated appeals and affirm the district court's orders.[1]

---

[1] In Cintas' motion to consolidate the last of its appeals, Cintas requested that we waive payment of the docketing fee required in connection with appeal No. 07-1365. That request is granted. The unresolved issue of attorney's fees did not affect the finality

(continued...)

## II.  Discussion

**A.  Employment Agreement**

We review the district court's grant of summary judgment de novo and view the facts in the light most favorable to Cintas as the non-moving party. *Valentine v. City of Chicago*, 452 F.3d 670, 677 (7th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Ohio law governs pursuant to the choice-of-law provision in the employment agreement.[2]

---

[1] (...continued)
of the district court's order granting summary judgment, and the two tag-along orders awarding and later quantifying fees and costs have been consolidated with the initial merits appeal. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988) (stating that "unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final"); *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994) ("[An] order awarding fees in an amount not yet determined can be consolidated on appeal with a final order."); *Cont'l Bank, N.A. v. Everett,* 964 F.2d 701, 702 (7th Cir. 1992) ("An open issue about legal fees, contractual or otherwise, does not affect our jurisdiction to resolve the appeal on the [merits] . . . ."); *Dunn v. Truck World, Inc.*, 929 F.2d 311, 312 (7th Cir. 1991) (holding judgment resolving merits and awarding attorney fees but not quantifying them final because "the merits and awards of fees are *always* distinct for purposes of finality").

[2] Cintas argues the district court erred by relying on the findings of fact and conclusions of law from its ruling on Cintas' motion for a preliminary injunction. However, Cintas offered
(continued...)

### 1. Non-Compete Provision

To prevail under Ohio law on its claim for breach of the non-compete provision in the employment agreement, Cintas must establish that the provision is reasonable and necessary to protect its legitimate interests. *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 546-47 (Ohio 1975). "A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Id.* at 547. If the provision is unreasonable or overbroad as written, the court may modify it "to protect the employer's legitimate interests." *Id.*

Perry violated the non-compete provision by accepting managerial employment with Aramark, which is identified as one of Cintas' competitors in the appendix

---

[2] (...continued)
very little new evidence in the one-year period between the close of evidence in the preliminary injunction hearing and the close of discovery—the only new evidence was Perry's answers to Cintas' interrogatories. The district court correctly articulated the summary judgment standard and did not err in referring to findings from the preliminary injunction phase of the lawsuit.

In addition, Cintas argues in its reply brief that the district court limited Cintas' ability to present new evidence—apparently Cintas wished to re-depose Perry but was unable to do so. Cintas raised this argument in reply and does not develop it, so we need not address it. *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Il.*, 424 F.3d 659, 664 n.2 (7th Cir. 2005) (stating "*de novo* review does not mean that we must make and support the parties' arguments for them").

attached to the employment agreement.[3] That leaves Cintas to demonstrate the provision is reasonable and necessary to protect its legitimate interests. Cintas did not make this argument below, however, arguing instead that the district court should exercise its authority to modify the non-compete to render it reasonable and enforceable under Ohio law. This is an implicit concession that the provision was overbroad and unenforceable as written.[4] On appeal, Cintas argues for the first time that the non-compete provision was reasonable and enforceable without modification. To the extent this point was not conceded, it is certainly waived; we have "repeatedly held that if a party fails to press an argument before the district court, he waives the right to present that argument on appeal." *Ohio Cas. Ins. Co. v. Bazzi Constr. Co., Inc.*, 815 F.2d 1146, 1149 (7th Cir. 1987).

Cintas argues in the alternative that the district court was *required* to modify the non-compete to render it reasonable and enforceable, citing this passage from the Ohio Supreme Court's decision in *Raimonde*: "We hold that a covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect the employer's legitimate

---

[3] Perry argues the case is moot with respect to any potential violations of the non-compete provision of the employment agreement because the two-year non-compete period has passed. However, because Cintas seeks damages in its complaint, the case is not moot. *Lavin v. Ill. High Sch. Ass'n*, 527 F.2d 58, 60 (7th Cir. 1975).

[4] Perry's National Account Manager position at Cintas was limited to the territory of Illinois and Indiana, but the non-compete provision imposed a two-year, *world-wide* ban on *any* employment with, consultation for, or ownership interest in more than 30 competitors of Cintas.

interests." 325 N.E.2d at 547. The court's use of the phrase "will be enforced," according to Cintas, imposes a mandatory duty on courts to modify unreasonable restrictive covenants in employment agreements. We think this overreads *Raimonde.* Prior to that decision, Ohio subscribed to the so-called "blue pencil" rule, which provided that "if unreasonable provisions exist in [an employment] contract, they may be stricken, if [divisible], but not amended or modified," and that "if restrictions are unreasonable and indivisible, the entire contract fails." *Id.* at 546. In *Raimonde*, Ohio abandoned that rule, replacing it with a "rule of reasonableness" that permits courts to modify or amend restrictive non-compete covenants to render them reasonable. *Id.*

Language elsewhere in *Raimonde* clarifies that the court was recognizing a *discretionary* judicial power to modify unreasonable non-compete provisions. The court said the rule of reasonableness "*permits* courts to fashion [an employment] contract reasonable between the parties, in accord with their intention at the time of contracting." *Id.* at 546-47 (emphasis added). The court also said that "[c]ourts are *empowered* to modify or amend employment agreements," *id.* at 547 (emphasis added), and "a trial court *may* enforce a covenant 'to the extent necessary to protect an employer's legitimate interest,'" *id.* at 548 (emphasis added). Later decisions of the Ohio Court of Appeals confirm that judicial modification of unreasonable or overbroad non-compete provisions under *Raimonde* is discretionary, not mandatory. *See LCP Holding Co. v. Taylor*, 817 N.E.2d 439, 446 (Ohio Ct. App. 2004) (noting that "a trial court may modify an unreasonable restrictive covenant to make it reasonable and enforceable," but "is not required to do so"); *Prof'l Investigations & Consulting Agency, Inc. v. Kingsland*, 591 N.E.2d 1265, 1270 (Ohio Ct. App. 1990) ("The use of permissive lan-

guage in the *Raimonde* decision implies that modification is within the discretion of the trial court.").

Cintas did not propose specific modified language that would suffice to render the non-compete provision reasonable and enforceable. Beyond arguing that the district court was *required* to modify the non-compete, Cintas has not suggested how the court abused its discretion in declining to do so. We perceive no abuse of discretion here.

Cintas also argues that Perry violated the non-compete provision by soliciting Cintas' customers. Assuming for the sake of argument that this clause of the non-compete provision is reasonable and enforceable, Cintas has not pointed to evidence sufficient to permit a reasonable juror to find a breach. *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005) (stating that when a party bears the burden of proof on an issue, that party has the burden to point out information in the record that demonstrates a genuine issue of fact; "the district court need not scour the record to find such evidence" (citation omitted)). Cintas first identifies Perry's discussion of his potential move to Aramark with a current Cintas customer as a breach. Even drawing all inferences in favor of Cintas, there is no evidence that this discussion included a solicitation. Moreover, after the conversation Perry signed this customer to a mandatory contract to purchase supplies from Cintas through 2006. Second, Cintas claims that Perry's act of accompanying an Aramark employee on a sales call to a Cintas customer was a solicitation. But Perry remained in the car and did not discuss the customer with the Aramark employee. This incident does not amount to solicitation. Finally, there is evidence that prior to leaving Cintas, Perry told two Cintas customers about his potential career move. Again, this is insufficient evidence of solicitation.

### 2. *Non-Solicitation of Employees Provision*

Cintas alleged Perry violated the non-solicitation of employees provision in two respects. First, Perry conducted a telephone interview of a former Cintas employee for a position at Aramark, but terminated the interview when he learned the applicant formerly worked at Cintas. The applicant—a *former* employee of Cintas—was not hired. This does not amount to solicitation of a Cintas employee. Second, Cintas points to Perry's conversation with a fellow Cintas sales manager about whether the employee was considering a job with Aramark. This does not amount to solicitation either. Considering these undisputed facts in the light most favorable to Cintas, no reasonable juror could find that Perry violated the non-solicitation of employees provision.

### 3. *Non-Disclosure Provision*

Cintas alleges Perry violated the provision prohibiting disclosure of confidential material based on his possession of three items: (1) two computer disks containing documents Perry prepared while at Cintas; (2) a National Accounts Manager performance ranking report; and (3) a blank employment agreement from Cintas' restricted access database. We address each in turn. The computer disks contained dated information, and Cintas has not demonstrated how the information on the disks might provide an advantage to competitors within the meaning of the non-disclosure provision in the agreement. The evidence reflects that Perry gave the disks to his Aramark assistant for the limited purpose of formatting a report—not for their substantive content—and Cintas concedes that the formatting was not confidential. The one-page performance ranking report was never disclosed to anyone at Aramark, nor did Perry make use of the document while at Aramark. Cintas also failed to explain how

this report would provide a competitive advantage to Aramark; it showed Perry was Cintas' highest-ranking National Account Manager in July of 2003. Finally, the blank employment agreement was not confidential—Cintas conceded as much, acknowledging that Perry had the right to disseminate a signed version of his employment agreement to others. Accordingly, Cintas failed to raise a jury issue on its claim that Perry violated the non-disclosure provision of the employment agreement.

### 4. Perry's Entitlement to Attorney's Fees and Costs

Whether Perry is entitled to costs and attorney's fees under the parties' employment agreement is a question of law that we review de novo. *Platinum Tech., Inc. v. Fed. Ins. Co.*, 282 F.3d 927, 931 (7th Cir. 2002) ("In contract interpretation cases, we review a district court's interpretation of an unambiguous contract de novo."). Again, the relevant contract language is as follows:

> If Employer sues Employee for a breach of covenant(s) in this Paragraph 3 and the court rules that Employee has not violated such covenant(s), Employer will pay all litigation costs and expenses and Employee's reasonable attorney's fees necessarily incurred in the litigation.

Cintas argues that litigation costs and attorney's fees are not recoverable because Aramark paid for Perry's defense. We disagree. The fee-shifting provision's use of the word "incurred" does not mean that Perry himself must pay the litigation costs and attorney's fees before being entitled to an award of costs and fees. To the extent there is any ambiguity, the provision is construed against Cintas as the drafter. *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996). The district court correctly concluded Perry was entitled to attorney's fees

and litigation costs under the employment agreement.[5]

## B.  Attorney's Fees and Costs Award

We review the district court's award of attorney's fees and costs for an abuse of discretion, *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006), and reverse the district court's award only "if it cannot be rationally supported by the record," *JT Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005). Perry submitted detailed billing statements and supporting evidence, as well as evidence regarding the rates billed by counsel; Aramark's timely payment of Perry's bills; and market rates for similar counsel in Chicago. After

---

[5]  As we have noted, after the district court quantified the fees and costs Perry was entitled to collect, the parties submitted separate briefs in this court addressing whether the district court abused its discretion based on the amount of fees and costs awarded. In its reply brief on that issue, Cintas argued, for the first time, that Perry was not entitled to collect any fees because the district court never affirmatively ruled that Perry had not violated the non-compete provision. Cintas argued that such a ruling is a condition precedent to Perry's entitlement to fees based on the language of the employment agreement: "If Employer sues Employee for a breach of covenant(s) . . . *and* the court rules that Employee has not violated such covenant(s) . . . ." (Emphasis added.) Not only does this argument appear for the first time in Cintas' appellate briefing, it appears in a *reply* brief addressing an entirely separate issue—whether the district court abused its discretion in quantifying the fees (*not* whether Perry was entitled to costs and fees, which had already been decided). If Cintas wanted to press this argument, the time and place to do so was before the district court, *Ohio Cas. Ins. Co. v. Bazzi Constr. Co., Inc.*, 815 F.2d 1146, 1149 (7th Cir. 1987), not in its reply brief on its appeal of the order quantifying the amount of costs and fees.

reviewing the submissions and considering Cintas' objections, the district court awarded Perry $287,815.00 in attorney's fees and $29,816.47 in costs. In doing so, the court denied several of Perry's requests. For example, in one instance, the court concluded support staff could have completed the task rather than an attorney, so $1293.75 in fees were denied. In another, the court denied $7851.34 in research costs because Perry did not provide a sufficient explanation for the charges. The court also addressed Cintas' objections to itemized amounts as low as $50.

The district court also rejected Cintas' complaint that Perry's counsel had engaged in impermissible "block billing." The court concluded the invoices were sufficiently detailed to permit adequate review of the time billed to specific tasks, and we see no abuse of discretion in this conclusion. In any event, the evidence in the fee proceeding established that Aramark paid Perry's bills; "[i]f counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *In re Synthroid Mkt'g Litig.,* 264 F.3d 712, 722 (7th Cir. 2001). The district court also held that Cintas had not succeeded in casting doubt on counsel's billing rates. The court concluded, in the same vein and consistent with circuit precedent, that the best evidence of whether attorney's fees are reasonable is whether a party has paid them. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004); *Medcom Holding Co. v. Baxter Travenol Labs, Inc.*, 200 F.3d 518, 520-21 (7th Cir. 1999); *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996). Aramark paid Perry's fees, and Perry submitted additional evidence establishing that the rates billed were consistent with the Chicago market for comparable legal work.

Cintas' remaining arguments hinge upon certain limitations on awards of costs and fees contained in various

federal statutes and rules. However, Perry's entitlement to litigation costs and fees is contractual, not statutory; limitations imposed by statute and rule are inapplicable. The parties' agreement provides for recovery of "*all* litigation costs and expenses" and "*reasonable* attorney's fees." The contract does not exclude any particular category or type of costs or fees from the allowable recovery. The district court is "in a superior position to observe the work of the attorneys . . . and appraise the appropriate value of their services*." Farfaras*, 433 F.3d at 569. Here, the district court did not abuse its discretion in analyzing the work performed and arriving at an award of litigation costs and reasonable attorney's fees incurred.

The district court's orders granting Perry's motion for summary judgment, awarding attorney's fees and costs under the employment agreement, and quantifying fees and costs are AFFIRMED.

A true Copy:

  Teste:

        _____
        *Clerk of the United States Court of*
         *Appeals for the Seventh Circuit*