In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3984

RK COMPANY,

*Plaintiff-Appellee,*

*v.*

JACKIE R. SEE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99-cv-04261—**Arlander Keys,** *Magistrate Judge.*

ARGUED SEPTEMBER 11, 2009—DECIDED SEPTEMBER 22, 2010

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Harvard Scientific Corpora-
tion ("HSC") and its founder Jackie R. See claimed to be
developing a new product to treat male and female
sexual dysfunction. Dr. See touted HSC's soon-to-be
success in creating this product in a series of press
releases and securities filings. This attracted an invest-
ment by RK Company ("RK"). Unfortunately, HSC's
claims of success were not true, and following a bench

trial, the court found Dr. See violated federal and state securities laws, state deceptive practices law, and committed common law fraud. Dr. See appeals the judgment, and argues that RK Company is not the real party in interest, that the magistrate judge's findings are clearly erroneous, and that the district court abused its discretion in admitting deposition testimony at trial. Dr. See also objects to the awarding of prejudgment interest and the calculation of attorneys' fees to RK. We reject these arguments. Dr. See has waived any argument based on the real party in interest defense, the findings of liability were more than adequately supported, and there was no abuse of discretion in the awarding of prejudgment interest and attorneys' fees. Dr. See has failed to include the transcript of the relevant motion hearing that led to the admitting of the deposition testimony, so we dismiss that claim as well. For these reasons, we affirm the court's judgment.

## I. BACKGROUND

Though there are a myriad of characters, family relations, and employees involved in this litigation and discussed in the briefs; we only recount those facts that are relevant to our analysis. In 1994, Dr. Jackie See founded HSC, a bio-pharmaceutical development company. Dr. See was HSC's founder, largest shareholder, and served at various points on its board of directors, executive committee and management committee. He was also the director of research and development and intellectual property holder of lypohilized liposome

prostaglandin E-1 ("LLPGE-1"), the male sexual dysfunction product that HSC hoped to bring to the market.

To obtain approval to begin clinical trials and test LLPGE-1 on humans, the United States Food and Drug Adminstration ("FDA") required HSC to submit an Investigational New Drug ("IND") application. In an October 1997 meeting between Dr. See and the FDA, the FDA learned that HSC had falsified the findings of a study included in its IND application and told HSC that it must cease further clinical studies until an audit was completed. Despite this meeting and deepening investigations by the FDA throughout 1997 and 1998, HSC released various press releases touting its alleged successes. In November 1997, HSC claimed it had "accelerated its progress" towards the completion of clinical trials. In May 1998, HSC announced that a female dysfunction product was moving forward with its male product. In June 1998, HSC released a statement that it had received notification from the FDA that it was free to initiate Phase II clinical trials, and in a separate release, announced it had developed a topically applied sexual dysfunction product. When these statements were released, the FDA clinical hold was still in effect and FDA investigations continued to increase. No clinical trials were moving forward on any products.

In addition to these press releases, HSC filed various forms with the United States Securities and Exchange Commission ("SEC"). In March 1998, for the fiscal year ending December 31, 1997, HSC stated that the Phase I trials of LLPGE-1 showed possible benefits of therapy and

that HSC was in substantial compliance with all laws during its October 1997 meeting with the FDA. In a March 1998 filing, for the fiscal quarter ending March 31, 1998, HSC announced plans for its female sexual dysfunction product using LLPGE-1. Dr. See's actual or electronic signature was on both filings.

In June 1998, Barbara Berry, who worked for HSC as its secretary and chief operating officer, was asked by Thomas Waite, HSC's then-chief executive officer, to approach her father, Robert Krilich, about whether he would be interested in investing in HSC. Berry forwarded a solicitation letter to her brother, Robert Krilich, Jr., so that he could send information to their father, who was in prison at the time.[1] Krilich received her letter, as well as HSC's SEC filings and press releases. In June and July of 1998, Krilich's investment vehicle, RK Company, purchased 166,667 shares of stock from HSC for $500,000. RK was unable to resell this stock.

In 1999, following a press release acknowledging a May 18, 1999 warning letter from the FDA, HSC stopped operations and went bankrupt. On June 25, 1999, RK filed suit against HSC and a variety of HSC's employees, including Dr. See, for inducing RK to buy HSC stock through its misleading and false press releases, SEC filings, and reports. Following protracted litigation, Dr. See remained the last defendant and the parties agreed to a bench trial and consented to proceeding

---

[1] Throughout this opinion, we refer to Robert Krilich as Krilich and his son as Krilich, Jr.

before a magistrate judge, *see* 28 U.S.C. § 636(c). The court found for RK on all claims, and Dr. See appeals.

## II. ANALYSIS

### A. "Real Party in Interest" Argument Waived

Dr. See strenuously challenges RK's identity, calling it an unlawful "beast" which does not own the claim and could not have brought this suit.[2] In the midst of trial, after Krilich testified that "RK Company" was the name under which he did business, Dr. See investigated RK's identity on an Illinois public records website and discovered that RK was not a legally registered corporation. The next day, Dr. See brought a motion for judgment as a matter of law, claiming that RK was not the party alleged in the complaint. He claims that RK is

---

[2] Dr. See also makes a cursory argument that RK lacked the capacity to sue, and claims that a capacity to sue defense cannot be waived. The Federal Rules of Civil Procedure however, clearly state that capacity to sue must be raised in a specific denial in an appropriate pleading or amendment. Fed. R. Civ. P. 9(a); *see Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343, 345-46 (7th Cir. 1991). While we briefly note that Illinois law (which governs capacity to sue here) allows an unregistered "doing business as" entity to sue and be sued, *Thompson v. Cadillac*, 543 N.E.2d 308, 310 (Ill. App. Ct. 1989), we do not reach the merits of this claim as we find that Dr. See has waived the argument that RK lacked the capacity to sue because he failed to raise it in his pleadings.

an unlawful "common law" trust created for tax evasion purposes, and as such, the trust is the "real party in interest" and any action needed to be brought by its trustee.

Rule 17(a) of the Federal Rules of Civil Procedure requires that "an action must be prosecuted in the name of the real party in interest." The "real party in interest" is the person who possesses the right or interest to be enforced through litigation, and the purpose of this procedural rule is to protect the defendant against a subsequent action by the party actually entitled to recover. Fed. R. Civ. P. 17(a) advisory comm.'s note (2009); *see also Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008); 4 Moore's Federal Practice § 17.10 (3d. 2009). But the rule also reflects an understanding that such disputes would be easy to resolve, as it further provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). The allowance of a reasonable time for the correct party to step into the plaintiff's role suggests that an "objection will be raised when such joinder is practical and convenient." *Gogolin & Stelter v. Karn's Auto Imports, Inc.*, 886 F.2d 100, 102 (5th Cir. 1989);

*see also* 6A Wright, Miller & Kane, Federal Practice and Procedure § 1554 (3d ed. 2008) ("Regardless of what vehicle is used for presenting the objection . . . it should be done with reasonable promptness."). Other circuit courts have held that the defense is waived if it is first raised during or shortly before trial. *See, e.g., Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 483 (5th Cir. 2002); *United HealthCare Corp. v. Amer. Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996) (waived when first raised at pretrial conference); *Allegheny Int'l v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1431 (3d Cir. 1994); *Whelen v. Abell*, 953 F.2d 663, 672-73 (D.C. Cir. 1992); *United States ex rel. Reed v. Callahan,* 884 F.2d 1180, 1183 n.4 (9th Cir. 1989); *Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir. 1982) (waived when first raised sixteen days before trial). In *Weissman v. Weener*, we observed that our legal system is "not geared to having judges take over the function of lawyers even when the result would be to rescue clients from their lawyers' mistakes," in acknowledging that other circuits have found Rule 17(a) to be an affirmative defense that can be waived. 12 F.3d 84, 86 (7th Cir. 1993) (citations omitted). Today, we too hold that "real party in interest" is a defense subject to waiver. We review the factual determinations upon which a court predicates a finding of waiver for clear error and the legal question of whether the conduct amounts to waiver de novo. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007); *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002).

Dr. See acknowledges that the defense that RK was not the real party in interest is subject to waiver, Appellant's

Br. at 31, but insists that his motion was timely because he filed it as soon as he discovered that RK was not duly incorporated. Dr. See claims he had no reason to doubt RK's legal status and that he was blindsided by the realization that RK was not the registered corporation he believed it to be. Dr. See misunderstands what it means to be "timely." Over seven years passed between RK's complaint and the bench trial. Dr. See could have, as he did the evening of Krilich's testimony, uncovered this information by a simple search of Illinois's public records. He could also have filed discovery requests about the authenticity of RK's identity and incorporation. He did not, and his mid-trial objection was far too late. *See, e.g., Gogolin & Stelter*, 886 F.2d at 102-03 (defense waived when made at the close of plaintiff's evidence); *Allegheny Int'l*, 40 F.3d at 1431 (defense waived when brought in a summary judgment motion).

Moreover, had Dr. See earlier objected to RK's position as the plaintiff, the only consequence would have been for Krilich to ratify the commencement of the action, or to be joined or substituted as the plaintiff. Krilich has testified that he did business as "RK Company." If RK and Krilich are one and the same, there would have been no reason for the court to have dismissed the suit without giving Krilich the opportunity to formally substitute his name for that of RK. And, a timely objection during the early stages of litigation would have uncovered any truth to, and allowed the parties to determine the relevance of, Dr. See's claim that RK was an

unlawful common law trust set up for tax evasion pur-poses.[3] Dr. See waived the defense that RK was not the "real party in interest" by failing to object during the more than seven years between the complaint and the beginning of trial.

## B.  Standing Argument Waived

Dr. See's constitutional and prudential standing argu-ments also lack merit. Because the real party in interest rule is only concerned with whether an action can be maintained in the plaintiff's name, it is similar to, but distinct from, constitutional or prudential standing limitations. *Rawoof*, 521 F.3d at 756-57. The familiar Article III standing requirements are: (1) an injury in fact; (2) causation; and (3) redressability. *Sprint Commc'ns Co., L.P., v. APCC Servs., Inc.*, 128 S. Ct. 2531, 2535 (2008); *Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 739 (7th Cir. 2009). RK easily meets these constitutional mini-mum requirements because it alleges: (1) it lost its $500,000 investment (2) due to Dr. See's violations of federal and state securities laws and (3) damages would remedy the injury.

---

[3] In response to questions about RK, Krilich testified that his business entity was set up by a man named in the transcripts as "Edward Bartolli," who he claimed was a Harvard University professor. During the course of litiga-tion, Dr. See submitted no evidence or discovery requests on this matter, and we express no opinion as to the legitimacy of RK as an investment vehicle.

In addition to jurisdictional limits on standing, there are prudential limitations on a federal court's power to hear cases. One well-established prudential limitation on justiciability is the principle that the named plaintiff cannot sue in federal court to assert the rights of a third party. *Nocula v. UGS Corp.,* 520 F.3d 719, 726 (7th Cir. 2008). A court determines whether the named plaintiff owns the claim by looking to applicable state or federal law. *See, e.g., Frank v. Hadesman & Frank, Inc.,* 83 F.3d 158, 159 (7th Cir. 1996). The court can sua sponte address this concern when it sees fit, *Weissman*, 12 F.3d at 86, but is not obligated to do so, *Rawoof*, 521 F.3d at 757. Because prudential limitations include concerns about a claim's rightful owner, we have described Rule 17(a) as a codification of this non-constitutional limitation on standing. *Rawoof*, 521 F.3d at 757. Prudential standing issues are subject to waiver, *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 749 (7th Cir. 2007); *Ensley v. Cody Res. Inc.*, 171 F.3d 315, 320 (5th Cir. 1999), and Dr. See waived any prudential standing concerns here.

## C.  The Evidence Was Sufficient

After a bench trial, the district court made findings of fact supporting its conclusion of liability against Dr. See and entered judgment in favor of RK. Picking and choosing elements from the various securities laws in question, Dr. See challenges the court's findings that Dr. See had an intent to defraud, that RK relied on material facts, and that Dr. See was a person with control over HSC. We review Dr. See's sufficiency of the

evidence challenge under a clearly erroneous standard, Fed. R. Civ. P. 52(a), and will not second-guess a district court's resolution of conflicting evidence or credibility determinations. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985); *Freeland v. Enodis Corp.*, 540 F.3d 721, 733 (7th Cir. 2008). We reverse only if we are left with the "definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573.

Dr. See supports his challenge by insisting that his version of the relevant events is true. He asserts that the district court "became confused and flustered" by Dr. See's testimony and that key facts were "not understood" by the court. We disagree and find the evidence is more than sufficient to support the district court's findings. Documentary and testimonial evidence established that the press releases included false statements and material omissions, such as HSC's claims that the FDA had authorized clinical studies when it had actually suspended them and HSC's intention to ship its products globally when there were no immediate plans to do so. Krilich and his son testified that Krilich read the SEC filings and press releases and relied on them. Several witnesses, including former employees of HSC, testified as to Dr. See's role in the company, his approval of press releases, his knowledge of the information in the SEC filings, and his signature that accompanied those SEC filings.

Most importantly, the court repeatedly described Dr. See's testimony as not credible. At times, direct evidence contradicted Dr. See's testimony, such as when

Dr. See testified that HSC had conducted clinical human trials and was confronted with his deposition testimony in which he had admitted that no human trials had been conducted. The district court described other testimony as "so unbelievable" as to be incredible on its face, such as Dr. See's insistence that he read and approved the first and third paragraph of a press release but missed the second paragraph entirely. Dr. See points to no evidence that unequivocally supports his version of events, *Bullard v. Sercon Corp.,* 846 F.2d 463, 466 (7th Cir. 1988), and we see no reason to doubt the court's credibility determinations. Based on the testimony and documentary evidence presented, the court did not err in determining that HSC, under the control and direction of Dr. See, released misleading statements of material fact upon which RK had relied in making its investment.

## D. Challenge to Gorgy's Deposition Testimony Fails Since Ruling Was Not Provided

Dr. See next appeals the court's decision to admit Medhat Gorgy's deposition testimony in evidence. Gorgy was the president of a company that provided contract, manufacturing, and analytical services for biotech and pharmaceutical companies. HSC hired Gorgy to, among other tasks, review and prepare submissions of the IND application to the FDA. Dr. See claims that the court, "for reasons unknown," amended the pretrial order to admit Gorgy's deposition. The reasons are unknown, however, because Dr. See failed to order the transcript

of the motion proceedings and include it in the record. Beyond the phrase "for the reasons stated on the record" on the minute docket entry, we have no evidence of the court's reasoning.

Federal Rule of Appellate Procedure 10(b)(2) provides that "if the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." Fed. R. App. P. 10(b)(2). This failure to produce the transcript makes it impossible for us to determine whether there was a reasonable basis for the district court's decision to admit Gorgy's deposition testimony. *Woods v. Theiret*, 5 F.3d 244, 245 (7th Cir. 1993). This is not a case where review remains possible despite the absence of a transcript, *see Piggie v. Cotton*, 342 F.3d 660, 663 (7th Cir. 2003), because the parties do not agree on what findings the district court made to support its decision to admit the deposition testimony in evidence. And although the district court allowed the parties to restate their positions in a portion of the trial transcript found in the record, it ultimately relied on its previous ruling on the matter, citing again "the reasons stated on the record." Because meaningful review of the court's reasoning is precluded, we dismiss Dr. See's challenge to the use of Gorgy's deposition testimony. *LaFollette v. Savage*, 63 F.3d 540, 544 (7th Cir. 1995) ("[D]ismissal is the appropriate course if the absence of a complete record precludes meaningful appellate review."). We also decline to use our authority to order Dr. See to supplement the record with

the transcript of the motion hearing. Fed. R. App. P. 10(e); *LaFollette*, 63 F.3d at 545. Dr. See was given the opportunity to correct the omission when RK pointed out in its answer brief that Dr. See had failed to provide the transcript, Appellee's Br. at 40, but Dr. See has made no attempt to supplement the record or to explain why a transcript was not necessary to permit meaningful review. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 731 n.10 (7th Cir. 2003).

**E.   Prejudgment Interest and Award of Attorneys' Fees Was Reasonable**

Dr. See's final two arguments challenge the district court's decision to award prejudgment interest and attorneys' fees to RK, both of which we review for an abuse of discretion. *Serafinn v. Local 722, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 597 F.3d 908, 919 (7th Cir. 2010) (attorneys' fees); *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 746 (7th Cir. 2003) (prejudgment interest). As to prejudgment interest, it is well-established in this circuit that prejudgment interest is presumptively available to victims of federal law violations. *Gorenstein Enters. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Prejudgment interest ensures that victims of federal law violations are fully compensated for their loss, as "a dollar received in 1992 is worth considerably more than a dollar in 2009." *S.E.C. v. Koenig*, 557 F.3d 736, 745 (7th Cir. 2009). Dr. See argues that RK's failure to request prejudgment interest in the final pretrial order waived RK's entitlement to

such an award. *See, e.g., Lindy Investments, LP v. Shakertown Corp.*, 209 F.3d 802, 804 (5th Cir. 2000). But, in this circuit, a failure to request prejudgment interest in the final pretrial order does not result in a waiver. *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir. 1987). Rule 54(c) of the Federal Rules of Civil Procedure provides that a prevailing party will be granted all the relief to which it is entitled, "even if the party has not demanded that relief in its pleadings," and we cannot see what prejudice Dr. See has suffered by RK's failure to include its request in the pretrial order. Prejudgment interest is presumptively available in this circuit, and Dr. See cannot argue that he would have acted any differently had the request been spelled out in the pretrial order. The court did not abuse its discretion in awarding prejudgment interest to RK.

We similarly find that the district court did not abuse its discretion in awarding RK attorneys' fees. An award of attorneys' fees will only be reversed if "it cannot be rationally supported by the record." *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008) (citations omitted). In the district court, and again here, Dr. See neglects to specify his objections to RK's fee petition. He tells us that there is no evidence that RK actually paid or incurred any fees, that Dr. See had "virtually no time" to prepare objections to the fee petition, and that "merely a cursory review" of RK's bills would establish the "duplicity" of the work. Then, Dr. See tells us that a court can disallow hours that were not reasonably expended. This is true, *Hensley v. Eckerhart*, 461 US. 424, 433-37 (1983), but to do so, Dr. See must detail his objections to the fee petition such that the court can determine what portion of the

fees, if any, were not reasonably expended. To facilitate the district court's ability to determine reasonable fee amounts, Local Rule 54.3 of the Northern District of Illinois requires parties who cannot agree on the amount of fees to file a motion documenting fees, hours, rates, and any objection to the fees, hours and rates of the opposing party. Though Dr. See asserts he had "virtually no time" to do this, RK sent invoices to him on April 9, 2007. In far excess of the 21 days granted by the local rule, Dr. See received extensions and did not file his general five-page response until August 2, 2007. The court did its best to respond to Dr. See's objections, and concisely supported its grant of attorneys' fees by observing that the litigation had lasted over seven years, involved complex securities fraud issues, and involved thousands of documents and filings. Furthermore, our "cursory review" of the fees reflect that the invoices were being paid by an RK employee, and we have previously stated that "the best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Cintas Corp.,* 517 F.3d at 469. Given Dr. See's failure to raise specific objections to RK's attorneys' fees and mindful of the district court's "superior understanding of the litigation," we find the district court did not abuse its discretion in awarding RK the full amount of fees requested.

### III.  CONCLUSION

We AFFIRM the magistrate judge's decision.

---