In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 20-1039 & 20-1049

TAI MATLIN and JAMES WARING,

*Plaintiffs-Appellants*,

*v.*

SPIN MASTER CORP., SPIN MASTER LTD.,
and SWIMWAYS CORPORATION,

*Defendants-Appellees*,

*and*

APPEAL OF: STOLTMANN LAW OFFICES.

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cv-7706 — **Virginia M. Kendall**, *Judge*.

———————————

ARGUED SEPTEMBER 24, 2020 — DECIDED NOVEMBER 10, 2020

———————————

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. Plaintiffs Tai Matlin and James Waring have spent seventeen years embroiled in disputes related to the intellectual property claims at issue in this case. In that

time, arbitrators have sorted out many aspects of this IP ker-fuffle, including that a company called Gray Matter is on the hook alone for paying certain royalties to Matlin and Waring. So, in 2017, when Matlin and Waring filed the suit now on appeal seeking those royalties from companies other than Gray Matter, they knew—or should have known—that they had a loser on their hands. And the district court recognized as much by sanctioning Matlin and Waring and ordering them and their former counsel, Stoltmann Law Offices, to pay certain costs and fees expended by Defendants Swimways and Spin Master.[1]

Accordingly, we affirm the district court's decision granting costs and fees to Swimways and Spin Master in the amount of $271,926.92. We also deny Appellees' motion for sanctions under Federal Rule of Appellate Procedure 38.

## I. BACKGROUND

In 1997, Matlin and Waring co-founded Gray Matter Holdings, LLC.[2] In 1999, they entered into a Withdrawal Agreement with Gray Matter. This Withdrawal Agreement entitled Matlin and Waring to royalties on the sales of certain "Key Products." In 2003, Gray Matter sold some of its assets to Defendant Swimways Corp.

Since this asset sale, Matlin and Waring have hauled Gray Matter into arbitration four times over their royalty rights. The third and fourth arbitrations are relevant to this appeal.

---

[1] For ease, this opinion refers to Spin Master Corp. and Spin Master Ltd. collectively as "Spin Master."

[2] Gray Matter later changed its name to 180s LLC. The court will use the name Gray Matter to refer to this entity.

The third arbitration determined that Gray Matter did not transfer its royalty obligations under the Withdrawal Agreement to Swimways. Gray Matter only transferred its intellectual property rights. As a result, Gray Matter, not Swimways, remained responsible for any royalty compensation owed to Matlin and Waring under the Withdrawal Agreement.

The fourth arbitration dealt with a claim by Matlin and Waring that Swimways tendered fraudulent filings to the United States Patent and Trademark Office ("USPTO") regarding the intellectual property rights in the Key Products. The arbitrator found no evidence supporting this claim. Moreover, even assuming the fraud allegations were true, the arbitrator determined that Matlin and Waring would not be entitled to relief because all intellectual property rights in the Key Products at issue had been transferred to Swimways; Matlin and Waring had no rights left in them to assert.

In 2016, Defendant Spin Master acquired Swimways. The next year, Matlin and Waring filed this suit against Swimways and Spin Master. Matlin and Waring's complaint alleged that they were entitled to royalties from Swimways and Spin Master for the Key Products and that Swimways tendered the alleged fraudulent filings discussed above to the USPTO. The district court dismissed the complaint for lack of personal jurisdiction. This court affirmed. Swimways and Spin Master then sought sanctions.

The district court granted the motion and sanctioned Matlin and Waring for "[o]pting to undertake this groundless lawsuit [that] was objectively unreasonable." To support this conclusion, the court noted that Matlin and Waring's claims were clearly barred by (1) "principles of *res judicata*"—*i.e.*, the

holdings of the third and fourth arbitrations—and (2) "the plain language of the governing contracts in dispute."

Regarding preclusion, the court found that the arbitrations were "binding and final" because the Withdrawal Agreement stated that "any dispute or controversy arising under or in connection with this Agreement … shall … be submitted to binding arbitration." And the third and fourth arbitrations precluded Matlin and Waring's claims because the complaint was "premised on the same foundational issues[, royalties and fraud,] previously decided in arbitration." The court thus ordered that Matlin and Waring, along with their former counsel, Stoltmann Law Offices ("SLO"), were jointly and severally liable for the costs and fees that Swimways and Spin Master expended preparing their motion to dismiss and motion for sanctions.

SLO then filed a motion to reconsider the sanctions order. SLO first argued that the court's order imposing sanctions on the basis of "principles of *res judicata*" was an improper advisory opinion because it reached the merits of the case after the case had already been dismissed without prejudice for lack of personal jurisdiction. The court disagreed with this "novel legal theory with no support in this circuit—or elsewhere." And, the court stated that "the Seventh Circuit has upheld a district court's 'impos[ition] [of] Rule 11 sanctions on bases different from those on which the case was dismissed.'"

SLO next took issue with the sanction amount. After considering SLO's argument, the court did set aside a sizeable portion of the $408,471.51 that Swimways and Spin Master initially sought but still awarded them $271,926.92 on the basis of their detailed accounting, and payment, of those costs and fees. The accounting showed that attorneys and staff for

Swimways and Spin Master spent 273.1 hours, charging an average rate of about $1,000 per hour, preparing the motion to dismiss and motion for sanctions, which consisted of five total filings. Matlin, Waring, and SLO ("Appellants") now appeal the district court's sanctions order and reassert the arguments from their motion to reconsider.

## II. ANALYSIS

We review *de novo* whether the court's sanction award was an unconstitutional advisory opinion. *Lopez Ramos v. Barr*, 942 F.3d 376, 380 (7th Cir. 2019). We review the court's imposition of sanctions for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

### A. The Sanctions Order Was Not an Advisory Opinion.

Article III's "case or controversy" requirement prohibits federal courts from issuing advisory opinions that do not affect the rights of the parties before the court. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). This proscription has never concerned us where a district court imposes Rule 11 sanctions on grounds different from those on which a case was dismissed. *See, e.g.*, *Pollution Control Indus. of Am., Inc. v. Van Gundy*, 21 F.3d 152, 156 (7th Cir. 1994) (affirming the propriety of sanctions for filing a case in which subject-matter jurisdiction did not exist even though the case had been dismissed for lack of personal jurisdiction); *Ghosh v. Lindley*, Nos. 92-1237 & 92-1899, 1993 WL 311958, at *2 (7th Cir. Aug. 17, 1993) (affirming a sanctions order for pursuing frivolous litigation even after the district court found it lacked subject-matter jurisdiction). And this is for good reason—a sanctions order always affects the parties' rights concerning the sanctions themselves. Indeed, the sanctions order in this case affected the rights of

Swimways and Spin Master to costs and fees and thus was not
an advisory opinion.

*B. Sanctions Were Proper.*

Under Federal Rule of Civil Procedure 11, courts may
sanction parties who file frivolous pleadings. For example,
"[b]ringing a claim that is barred by *res judicata* is sanctiona-
ble." *Singh v. Curry*, Nos. 88-2981 & 89-1619, 1995 WL 632464,
at *3 (7th Cir. Oct. 25, 1995) (citing *Cannon v. Loyola Univ. of
Chi.*, 784 F.2d 777, 782 (7th Cir. 1986)). The district court in this
case sanctioned Appellants because Matlin and Waring's
claims were clearly (1) precluded by "principles of *res judi-
cata*" and (2) groundless based on "the plain language of the
governing contracts." We will address both bases in turn.

First, Illinois law controls the preclusion issue in this case.
*Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) (citing *Semtek
Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)).
And both federal district courts and the Illinois Appellate
Court have held that Illinois affords preclusive effect to bind-
ing arbitration awards, even if unconfirmed, unless preclu-
sion impinges on a party's federal rights. *See, e.g.*, *Plastic Re-
covery Techs., Co. v. Samson*, No. 11 C 2641, 2011 WL 3205349,
at *3 (N.D. Ill. July 28, 2011) (citing *Stulberg v. Intermedics Or-
thopedics, Inc.*, 997 F. Supp. 1060, 1066–67 (N.D. Ill. 1998); *Mon-
mouth Pub. Sch., Dist. No. 38 v. Pullen*, 489 N.E.2d 1100, 1105
(Ill. App. Ct. 1985)).[3] In short, "[i]f [an] arbitration award is
binding on the parties, any inquiry into the matters originally

---

[3] Appellants argue that, because some jurisdictions hold otherwise, it
is not clear whether unconfirmed arbitration awards can be preclusive in
Illinois. But they do not cite any authority showing that Illinois law is un-
settled on this point.

controverted is forever closed." *Monmouth*, 489 N.E.2d at 1106.

Here, Matlin and Waring's suit did not seek to vindicate federal rights. And there is little question that the third and fourth arbitrations were binding—the Withdrawal Agreement specified that "any dispute or controversy arising under or in connection with this Agreement … shall … be submitted to binding arbitration." So the only issue is whether the third and fourth arbitrations disposed of the underlying suit's claims. Upon considering those claims and the rulings of the arbitrators, it quickly becomes apparent that they did.

The third arbitration resolved Matlin and Waring's allegation that Swimways and Spin Master owed them royalties from the Withdrawal Agreement by finding that "[w]hile certain assets of [Gray Matter] were transferred in conjunction in the Asset Sale, the Withdrawal Agreement was not one of them." In fact, we have previously stated that the third arbitration "determined that Gray Matter did not assign the Withdrawal Agreement to Swimways upon sale of the products and that [Matlin and Waring] were owed no further royalties." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 703–04 (7th Cir. 2019).

The fourth arbitration similarly resolved Matlin and Waring's fraud claims by finding that they retained no ownership interest in the intellectual property associated with those allegations.

Second, Appellants make little argument regarding the "plain language of the governing contracts." But this second basis for sanctions is compelling. Once again, Appellants' first claim hinged on the presumption that Swimways assumed

royalty obligations under the Withdrawal Agreement in its 2003 asset purchase. The purchase agreement unambiguously provided, however, that Swimways only assumed liabilities from Gray Matter under specific "Assumed Contracts," and the Withdrawal Agreement was not one of those contracts.

In sum, because preclusion and the language of the contracts rendered Matlin and Warring's suit frivolous, the district court did not abuse its discretion in finding that "[o]pting to undertake this groundless lawsuit was objectively unreasonable and necessitate[d] sanctions."

*C. The Sanctions Award Was Reasonable.*

Federal Rule of Civil Procedure 11 authorizes district courts to award "reasonable" attorney fees to a prevailing party as a sanction against the losing party. *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir. 1988).

In arriving at its decision regarding sanctions, the district court noted that Swimways and Spin Master submitted a detailed accounting of their work pertaining to their successful motions to dismiss and for sanctions.

The district court limited the award of monetary sanctions to the fees and costs relating only to the preparation and filing of Swimways and Spin Master's motion to dismiss and motion for sanctions. The sanctions award did not include costs associated with the initial review of Matlin and Warring's complaint and appeal. As a result, the court reduced the sanctions award sought of $408,471.51 to an amount actually awarded of $271,926.92.

Based on the findings set forth by the district court in its order of December 10, 2019, we believe the sanctions amount of $271,926.92 to be reasonable.

As to the reasonableness of the attorney fees charged by counsel for Swimways and Spin Master, the district court pointed out the following:

> Jonathan Graves, lead counsel for Defendants in this matter, has 28 years of litigation experience, primarily in the intellectual property sector. (Dkt. 74-1, ¶ 5). Mr. Graves' effective hourly billable rate ranged from $973 to $1,092 during this matter. (Id. at ¶ 7). Though Mr. Graves' rate, and that of his co-counsel, are above the median rate of comparable intellectual property attorneys (Dkt. 74-2), it is nonetheless reasonable. The best evidence of this is that Defendants have in fact paid these rates (Dkt. 74-1, ¶ 21). *Cintas Corp. v. Perry*, 517 F.3d 459, 469–70 (7th Cir. 2008) ("The court concluded, in the same vein and consistent with circuit precedent, that the best evidence of whether attorney's fees are reasonable is whether a party has paid them.").

Turning now to the reasonableness of the time expended on the preparation and filing of Swimways and Spin Master's motion to dismiss and motion for sanctions, the district court observed:

> Plaintiffs take issue with the amount of time that Defendants expended in defending the lawsuit. This argument is specious. Plaintiffs filed a federal lawsuit containing serious charges and seeking significant damages. That Defendants responded forcefully should be of little surprise. *See Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 648 (7th Cir. 1992) ("We have little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was only firing blanks."). Plaintiffs and SLO have failed to carry their burden to overcome the presumption of reasonability here. *Robinson*, 489 F.3d at 872.

The district court further explained:

> Defendants, and their counsel, were faced with persistent litigants who were undeterred by prior defeats. As such, Defendants attempt to put the final metaphorical nail in the coffin by disposing of this federal lawsuit and seeking sanctions was entirely reasonable.

As the district court stated, "the best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Cintas Corp. v. Perry*, 517 F.3d 459, 469–70 (7th Cir. 2008). And in this case, Swimways and Spin Master in fact paid their attorneys $271.926.92 to prepare the motions to dismiss and for sanctions. We thus hold that the district court's findings were reasonable, especially under our deferential abuse of discretion standard of review. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (explaining that a district court's fee award receives wide latitude under a "highly deferential abuse of discretion standard" (quoting *Estate of Borst v. O'Brien*, 979 F.2d 511, 514 (7th Cir. 1992))).

### III. CONCLUSION

We AFFIRM the decision of the district court to impose sanctions in the amount of $271,926.92.

We DENY Appellees' motion for sanctions under Federal Rule of Appellate Procedure 38.[4]

---

[4] Sanctions against Appellants under Federal Rule of Appellate Procedure 38 are not appropriate because Appellants made a reasonable—although unsuccessful—argument regarding the excessiveness of the sanctions imposed against them.